**Michael MATTALINO, Plaintiff,**

v.

**TRINITY PETROLEUM EXPLORATION, Defendant.**

**Civil Action No. H–94–3302.**

United States District Court, S.D. Texas, Houston Division.

May 2, 1996.

Benjamin T. Willey, Oklahoma City, OK, for Plaintiff.

barron W. Dowling, San Antonio, TX, for Defendant.

OPINION ON SUMMARY JUDGMENT

HUGHES, District Judge.

1. *Introduction.*

A geologist sued a promoter for breaching their agreement that the geologist would receive a specified overriding royalty on leases taken by the geologist in the area of interest. Because he accepted a lower royalty to enable the promoter to sell the deal and because the promoter did not take the leases itself, the geologist will be left with the reduced interest as his full compensation.

2. *Facts.*

Michael Mattalino sued Trinity Petroleum Exploration, Inc., for breach of contract. The contract covered Trinity's use of geological research by Mattalino. Mattalino seeks either a higher overriding royalty under the contract or compensation for Trinity's not having marketed the oil prospects more advantageously.

On November 11, 1989, Mattalino and Trinity agreed on a geological retainer. Mattalino agreed to furnish geological interpretations for oil and gas prospects in Texas and Louisiana. In return, Mattalino was to receive pay, expenses, bonuses, and an overriding royalty. On prospects recommended by Mattalino and acquired by Trinity, Mattalino was to get an overriding royalty of 1% of an 8/8ths mineral interest; the geologist's interest was to be reduced in the same proportion as Trinity's initial working interest was less than 8/8ths. The contract ran from October 1, 1989, to October 1, 1990.

In December 1989, Mattalino disclosed to Trinity a promising site in a heavily developed region south of Laredo, Texas. Trinity, acting as a promoter, recommended the prospect to Sterling Energy Corporation with which it had a consulting contract. Sterling acquired leases to the Ervin, Richter, Lafon, and Wright tracts.

Sterling's deal with Trinity was for Trinity to get a 1.5% overriding royalty and Mattalino to get a 1.0% overriding royalty in the Richter and Ervin leases only. Sterling would yield no overriding royalties in the Lafon and Wright leases. Sterling then made a deal with Anderman/Smith Operating Company. Anderman agreed to buy a 50% working interest in the four leases from Sterling; however, it agreed to bear its proportionate share of Trinity and Mattalino's royalties only on the Richter and Ervin leases. Anderman was unwilling to bear the overriding royalties on the Lafon and Wright leases.

Sterling told Trinity and Mattalino that Anderman did not want to pay them on the Lafon and Wright leases. As Anderman and Sterling structured their deal, Trinity and Mattalino would get their full compensation on one-half of the land and one-half of their expected compensation on the other one-half, effectively reducing their interests to three-quarters of the expected rate on the whole deal. Trinity and Mattalino recall different results of this meeting. Mattalino says that he never accepted the reduction; Trinity admits that it accepted and claims Mattalino did, too.

On August 30, 1990, Sterling assigned Mattalino his diminished share in the Lafon and Wright tracts. The assignments were recorded on October 3, 1990. At no time did Trinity have a working interest in the leases.

3. *Claims under the Contract.*

■ Trinity contends that the contract provides no basis for Mattalino to seek a larger overriding royalty. Because the agreement contemplates a reduction of Mattalino's overriding royalty proportionate to Trinity's initial working interest, Trinity argues that the agreement relates only to prospects in which Trinity acquires a *working* interest.

Mattalino argues that the phrase "acquired by Trinity" refers to *any* interest acquired by Trinity. Mattalino says he is entitled to his full 1.0% overriding royalty because Trinity has overriding royalties in both the Lafon and Wright leases.

■ "Acquire" means "to become an owner of property; to make property one's own." Blacks Law Dictionary 24 (6th ed. 1990). The *meaning of acquire* suggests a totality lacking in Mattalino's interpretation. Acquiring an overriding royalty is different from acquiring the working interest in a prospect.

The key distinction lies in the difference between a working interest and an overriding royalty. One who has a working interest shares in the costs and management of the drilling operation as well as the profits. One who has an overriding royalty shares only in the gross revenues and has no role in the management of the well. With 50% working interests each, Sterling and Anderman both "acquired" the prospect. They were to run it and be responsible for it. With small overriding royalties, Trinity and Mattalino did not "acquire" the prospect. They were not charged with developing or operating the wells. Their role was that of a beneficiary.

This reading of the contract accords with language found later in the same clause. That the parties anticipated calibrating Mattalino's overriding royalty to the level of Trinity's working interest demonstrates that the agreement applied only to leases where Trinity *had* a working interest. The proportionate reduction clause, if applied to all interests of Trinity, would result in Mattalino getting what he got because his overriding royalty is fully proportionate to Trinity's overriding royalty.

The contract is unambiguous and summary judgment is proper.

### 4. *Acquiescence as Waiver.*

■ Trinity argues that the signing of a division order by an experienced oil and gas man like Mattalino, coupled with his acceptance of the reduced royalty payments, waived his rights to larger royalties.

■ While the Texas Division Order Statute does not support Trinity's contention that Mattalino waived his contractual rights as a matter of law, signing the division order does count as evidence of an intent to waive one's rights. Tex.Nat.Res.Code Ann. § 91.401(3) (1978).

Because of his experience in the oil and gas business, Mattalino recognized immediately that his overriding royalty was not what it should be when he received the division order. Mattalino signed the division order and accepted the royalty payments for several months, yet he never made a formal demand or complaint. Without a factual dispute, the evidence of waiver is sufficient for summary judgment.

■ Trinity's alternative argument that Mattalino should be equitably estopped from pursuing his claim fails. Trinity did not demonstrate reliance on its part that would be affected negatively by Mattalino's change in position.

### 5. *The Statute of Frauds.*

■ Trinity claims that Mattalino's contract falls within the statute of frauds because it lacks the requisite specificity of material terms to be an enforceable writing. Trinity argues that the word "prospect" was not defined in the contract. Trinity contends that, without an express definition of "prospect," the contract is vague about a material term and must fail.

■ Both parties were aware of the meaning of "prospect." Trinity fails to argue that the parties *actually disputed* the meaning of the word, instead arguing that the word is inherently vague. When no active disagreement exists, no vagueness exists. So long as the court can reasonably fix the responsibilities of the parties, the contract is enforceable. *Solomon v. Greenblatt,* 812 S.W.2d 7 (Tex.App.—Dallas 1991, no writ).

### 6. *Extraordinary Duties.*

■ Mattalino argues that Trinity should not have recommended the prospect to a company unable to bear the overriding royalties on all four leases. By doing so, Mattalino contends that Trinity violated duties that went above and beyond the contract. Trinity maintains that, as a matter of law, it owed no extraordinary duties to Mattalino to market the information in a specific way.

990

■ .Trinity is correct. Duties beyond those specified in a contract can exist only when an extraordinary relational bond exists between the parties. None of these elements is present here. *Crim Truck and Tractor Co. v. Navistar Int'l Transp. Corp.* 823 S.W.2d 591 (Tex.1992); *Aranda v. Ins. Co. of North America,* 748 S.W.2d 210 (Tex.1988). Mattalino did not retain an interest in controlling the marketing of the prospects once acquired by Trinity.

### 7. *Statute of Limitations.*

■ Trinity insists that Mattalino's claims arose more than four years before he filed suit and that they are barred by the Statute of Limitations. Tex.Civ.Prac. & Rem.Code Ann. §§ 16.003, 16.004, 16.035, 16.051 (1986). This argument fails. The assignments detailing his reduced share of the Lafon and Wright leases were not recorded until October 3, 1990. Mattalino filed suit on September 26, 1994, within the four-year period. That Sterling acquired the lease at an earlier time is irrelevant. Mattalino's claim did not arise until Sterling recorded the assignment demonstrating Mattalino's reduced overriding royalty. If a trial were required, Trinity might be able to prove that Mattalino knew of the reduction before the recording, but it can now only be said that he knew as a matter of law when the assignment was recorded.

### 8. *Conclusion.*

Because Trinity never acquired a working interest in the leases and because it owed Mattalino no extraordinary duties, Mattalino's claims fail. Reading the contract broadly, Mattalino still has no claim because he got his correct share proportioned to what Trinity acquired.