**George E. NEEL, Jr. and Suzy Neel Mayo, Appellants,**

v.

**KILLAM OIL COMPANY, LTD.; Hurd Enterprises, Ltd.; Enron Oil & Gas Company; Tracy Leigh Killam Dileo; Sara S. Hurd Garcia; Victoria L. Hurd Goebel; Alice J. Hunt, Individually and as Trustee of the Douglas O. Hunt Trust; John G. Hurd; John R. Hurd; David Killam; Adrian Kathleen Killam; Patricia Hurd McGregor; Bill C. Tucker; and Kenneth Earl Wilber, II, Appellees.**

No. 04–01–00148–CV.

Court of Appeals of Texas, San Antonio.

July 31, 2002.

Rehearing Overruled Sept. 4, 2002.

Don H. Magee, Patton G. Lochridge, John W. Stayton, Jr., McGinnis, Lochridge & Kilgore, L.L.P., Austin, for Appellant.

Carlos David Castillon, Freeman & Castillon, Laredo, Marshall Boykin, III, Wood, Boykin ·& Wolter, P.C., Corpus Christi, Corby Considine, Michael J. Wilson, Tevis Herd, Rick D. Davis, Jr., Cotton, Bledsoe,

Tighe & Dawson, P.C., Midland, for Appellees.

Sitting: SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

Opinion by: SANDEE BRYAN MARION, Justice.

This is a suit to construe a mineral deed. George E. Neel and Suzy Neel Mayo filed a declaratory judgment suit[1] to establish their claimed ownership of a one-half royalty interest in the oil and gas produced from 2000 acres in Webb County under a lease executed in 1980. The parties filed competing motions for summary judgment, and the trial court held, *inter alia*, that Neel and Mayo owned a fixed one-sixteenth royalty interest; Neel and Mayo were not entitled to prejudgment interest on the unpaid royalties; and Neel and Mayo's claims were not barred, in part, by the statute of limitations. All parties appeal the judgment. In an opinion and judgment dated May 22, 2002, we affirmed the trial court's judgment in part and reversed and remanded in part. The parties have each filed motions for rehearing. We deny the motions for rehearing, withdraw our opinion and judgment of May 22, 2002, and issue this opinion and judgment in its place.

## STATEMENT OF FACTS

In September 1945, Anita Ugarte de Ortiz conveyed to Joe A. Ortiz a nonparticipating royalty interest by a deed ("the Ortiz–Ortiz deed"). In December 1945, Joe A. Ortiz conveyed his entire interest in the nonparticipating royalty to George E. Neel by a deed ("the Ortiz–Neel deed"). Appellants, Neel and Mayo, are George E. Neel's successors-in-interest. The relevant provisions of the Ortiz–Neel deed are as follows:

That I, Joe A. Ortiz, of the County of Webb and State of Texas, hereinafter called Grantor, (whether one or more) for and in consideration of the sum of Ten and No/100 ($10.00) Dollars cash in hand paid, (and other good and valuable considerations), by Geo. E. Neel, hereinafter called Grantee (whether one or more) the receipt of which is hereby acknowledged, have Granted, Sold and Conveyed, Assigned and Delivered, and by these presents do Grant, Sell, Convey, Assign and Deliver unto the said Grantee an undivided one-half (1/2) interest in and to all of the oil royalty, gas royalty, royalty in casing head gas and gasoline, and royalty in all other minerals in and under and that may be produced and mined from the following described land situated in the County of Webb....

. . .

All of the above aggregating 2000 acres, on which one-half royalty is hereby conveyed, together with the right of ingress and egress at all times for the purpose of recovering, removing and receiving the same therefrom. This grant shall run forever.

If said land is now under an oil, gas and mining lease or leases, it is understood and agreed that this sale is made subject to the terms of said lease or leases, but covers and includes one-half

---

1. Neel and Mayo sued Killam Oil Company; Hurd Enterprises, Ltd.; Amoco Production Company; and Enron Oil & Gas Company (collectively, "the oil company defendants"). The oil company defendants were responsible, at different times, for making royalty payments to Neel and Mayo. When this dispute originated, Amoco and Enron paid a partial royalty to Neel and Hurd, but Killam and Hurd stopped the royalty payments altogether. Neel and Mayo also sued numerous other royalty owners because their interests would be affected by the trial court's declaratory judgment.

(1/2) of all the oil royalty, gas royalty, casing head gas and gasoline royalty, and royalty from other minerals or products, due and to be paid under the terms of the said lease or leases in so far as said lease or leases covers the herein above described property.

. . .

In the event the present oil, gas and mineral lease or leases covering the above described property, or any part thereof, if there be any such lease or leases, terminate, lapse or is forfeited, then Grantee shall own and be entitled to receive as a free royalty, (1) An undivided one-sixteenth (1/16th) of all the oil produced and saved from the premises, delivered to Grantee's credit free of cost in the pipe line, (2) An undivided one-sixteenth (1/16th) interest and portion of the value or proceeds of the sales of natural gas, (3) An undivided one-sixteenth (1/16th) portion of the net amount of gasoline or other products manufactured from gas or casing head gas produced from wells situated on the premises, (4) An undivided (1/16th) of all other minerals produced from the said premises forever, from the above described property.

Should a future lease or leases be executed covering the above described property, or any part thereof, then Grantee shall receive the mineral interests described in the preceding paragraph out of the royalty provided for in such leases.

At the time the two 1945 deeds were executed, the land was subject to an oil and gas lease, signed in 1940, which reserved a one-eighth royalty interest in production. The 1940 lease eventually expired, and a new lease was executed on July 1, 1980, which granted a one-fourth royalty in the production of oil and gas. This lease remains in effect.

While the 1940 lease was in effect, Neel and Mayo received a one-sixteenth royalty, derived by multiplying the one-half interest granted in the Ortiz–Neel deed by the one-eighth royalty reserved in the 1940 lease. After the 1980 lease was executed, Neel and Mayo continued to receive royalties based on the one-half interest granted in the deed. At the time, Killam Oil Company, Ltd. and Hurd Enterprises, Ltd. construed the Ortiz–Neel deed's granting clause (which granted a one-half royalty) as controlling all other clauses (including the future lease clause, which indicated that a one-sixteenth royalty would be paid upon execution of any new lease). Killam and Hurd relied on *Alford v. Krum*, 671 S.W.2d 870 (Tex.1984), in which the Texas Supreme Court held that when there is an irreconcilable conflict between the clauses of a deed, the granting clause prevails over all other provisions.

However, in 1991, the Texas Supreme Court issued *Luckel v. White*, 819 S.W.2d 459 (Tex.1991), which rejected the *Alford* approach and required a return to the "four corners" approach to construe a deed with provisions that contain conflicting fractional interests. Believing that *Luckel* altered the interpretation of the Ortiz–Neel deed, Killam and Hurd decided that Neel and Mayo were entitled only to a fixed one-sixteenth royalty interest in the production. Neel and Mayo disputed this interpretation, arguing they were entitled to one-half of the one-fourth royalty reserved in the 1980 lease, or, one-eighth of production. Because the parties could not agree on how to construe the Ortiz–Neel deed, Killam and Hurd ceased paying all royalties. Also in 1991, Amoco Production Company, and later Enron Oil & Gas Company, began paying only a one-sixteenth royalty to Neel and Mayo. The trial and this appeal eventually ensued.

## STANDARD OF REVIEW

We review a summary judgment *de novo. Sasser v. Dantex Oil & Gas, Inc.*, 906 S.W.2d 599, 602 (Tex.App.-San Antonio 1995, writ denied). Summary judgment is proper when the summary judgment record establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law on a ground set forth in the motion. *See* TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Property Mgmt.Co.*, 690 S.W.2d 546, 548 (Tex.1985). A defendant moving for summary judgment must either disprove at least one element of the plaintiff's theory of recovery, or plead and conclusively establish each essential element of an affirmative defense. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex.1979). The evidence must be viewed in the light most favorable to the nonmoving party and all contrary evidence and inferences must be disregarded. *Nixon*, 690 S.W.2d at 548.

When competing motions for summary judgment are filed, and one is granted and the other denied, the reviewing court must review the summary judgment evidence presented by both sides and determine all questions presented. *Commissioners Court of Titus County v. Agan*, 940 S.W.2d 77, 81 (Tex.1997). We are required to consider all summary judgment grounds the trial court ruled on and the movant preserved for appellate review that are necessary for final disposition of the appeal. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex.1996).

## NEEL AND MAYO'S ROYALTY INTEREST

Neel and Mayo assert that the intent of the parties to the Ortiz–Neel deed was to convey a one-half royalty interest in any lease, regardless of when the lease is executed, forever.

As the Texas Supreme Court has observed, the proper construction of deeds that contain one or more differing fractions "has been a recurring issue." *Concord Oil Co. v. Pennzoil Exploration and Prod. Co.*, 966 S.W.2d 451, 454 (Tex.1998). When a deed is unambiguous, as is the deed in this case, its construction is a question of law for this court. *Luckel*, 819 S.W.2d at 461. Our primary duty is to ascertain the intent of the parties from all the language in the deed by a fundamental rule of construction known as the "four corners" rule. *Id.* at 461. The actual intent of the parties as expressed in the instrument as a whole prevails over arbitrary rules. *Id.* at 462. In particular, the labels we have given the clauses of "granting," "warranty," "habendum," and "future lease" are not controlling; we must give effect to the substance of the unambiguous provisions, not the labels. *Id.* at 463. To ascertain the parties' intent, we must harmonize all parts of the deed, even if different parts of the deed appear contradictory or inconsistent. *Id.* at 462. We assume that the parties intended that every clause of a deed have some effect and, in some measure, to evidence their agreement. *Id.*

As in *Luckel*, the Supreme Court in *Concord Oil*, construed a deed under which provisions other than the granting clause gave rights to the grantee that, considered in the aggregate, amounted to a larger fraction of the mineral or royalty interest specified in the granting clause. *See Concord Oil*, 966 S.W.2d at 455 and discussion of cases cited therein. Here, we are faced with the converse—the Ortiz–Neel deed's granting clause specifies a larger fraction (one-half) than the other clauses (one-sixteenth). Nevertheless, that distinction does not alter our application of the rule set forth in *Luckel* that we must construe the parties' intent by harmonizing all parts of the deed.

Neel and Mayo assert they are entitled to one-half of the one-fourth royalty reserved under the 1980 lease, because one-half is the fraction conveyed in the Ortiz–Neel deed's granting clause and subject to clause. According to Neel and Mayo, the conveyance of the one-half interest in these two clauses runs "forever" based upon the language of the following clause: "All of the above aggregating 2000 acres, on which one-half royalty is hereby conveyed, together with the right of ingress and egress at all times for the purpose of recovering, removing and receiving the same therefrom. *This grant shall run forever.*" (Emphasis added.) This clause mirrors a similar clause in the Ortiz–Ortiz deed which provided, "All of the above aggregating 2000 acres, on which one-half royalty is hereby conveyed. Grantor further grants the right of ingress and egress at all times for the purpose of recovering, removing and receiving said royalty. This grant shall run, and the rights, titles and privileges hereby granted shall extend to Grantee herein, and to Grantee's heirs, administrators, executors and assigns Forever." We disagree with Neel and Mayo's argument that this single sentence dictates that the amount of the royalty shall remain one-half, forever. Instead, we must look to the entire deed to determine the amount of the royalty the grantor intended to convey. *See Luckel,* 819 S.W.2d at 461–62. We determine the parties' intent from the whole document, not by the presence or absence of a certain provision. *Concord Oil,* 966 S.W.2d at 457.

As to Neel and Mayo's reliance on the granting and subject to clauses, we begin our discussion with the conveyance that preceded the Ortiz–Neel deed. In September 1945, Anita Ortiz conveyed to Joe Ortiz a one-half interest in any royalties produced or mined from the land. The Ortiz–Ortiz deed contained an "existing lease" clause, which made the deed subject to a then effective 1940 lease, under which a one-eighth royalty was paid. The deed did not grant Joe Ortiz the right to participate in the negotiation and execution of any oil and gas lease or to share in any bonus payments or delay rentals. However, the deed contained a "minimum royalty" clause under which Anita Ortiz guaranteed that all future leases covering the land would provide for a royalty of at least one-eighth, and a "fee development" clause under which Joe Ortiz would receive one-sixteenth of all production as a free royalty if Anita Ortiz, or her successors or assigns, developed the property as fee owners without the benefit of a lease. Under the deed's "future lease" clause, Joe Ortiz was entitled to one-sixteenth of production. Therefore, Joe Ortiz acquired a one-sixteenth interest in present production under the 1940 lease and a one-sixteenth interest in future production.

In December 1945, Joe Ortiz conveyed his entire interest to George E. Neel. The Ortiz–Neel deed contains some, but not all, of the same clauses as in the Ortiz–Ortiz deed. The "granting clause" in the Ortiz–Neel deed conveys a one-half interest in any royalties produced or mined from the land. The deed does not contain a "minimum royalty" clause or "fee development" clause. The Ortiz–Neel deed contains an "existing lease" clause, which made the deed subject to the 1940 lease. The Ortiz–Neel deed contains a "lease termination" clause under which Neel would receive one-sixteenth of all production as a free royalty if the present lease (which was the 1940 lease) terminated, lapsed or was forfeited. Following the "lease termination" clause, the Ortiz–Neel deed contains a "future lease" clause, which provides that, if a future lease is executed, Neel will "receive the mineral interests *described in the preceding paragraph* out of the royalty pro-

vided for in" the future lease. (Emphasis added.)

Under the Ortiz–Neel deed, George E. Neel, and his successors, received all that Joe Ortiz had to convey—a royalty interest of one-sixteenth; in other words, a present interest of one-half of the one-eighth royalty reserved in the 1940 lease and the right to receive one-sixteenth of production after expiration of the 1940 lease and from any future leases. The 1980 lease triggered the future lease clause, under which Neel would receive the interests described in the lease termination clause. The lease termination clause specifies a one-sixteenth interest in production. Therefore, harmonizing all parts of the Ortiz–Neel deed together, we conclude that the parties intended to convey a fixed one-sixteenth interest in production.

## PREJUDGMENT INTEREST

Killam and Hurd paid Neel and Mayo royalties from 1987 to 1991 based on division orders showing they owned a one-eighth royalty. After *Luckel*, Killam and Hurd cancelled the division orders in late 1991 because they determined that Neel and Mayo owned a one-sixteenth royalty. Neel and Mayo refused to sign new division orders showing they owned only a one-sixteenth royalty. Neel and Mayo assert Killam and Hurd wrongfully withheld the undisputed one-sixteenth royalty, thus they are entitled to prejudgment interest on that amount. We agree.

■■■ The Texas Natural Resources Code specifies when payments of proceeds derived from the sale of oil or gas must be paid. *See* TEX. NAT. RES.CODE ANN. § 91.402(a) (Vernon 2001). The Code provides that payments may be withheld without interest beyond the time limits set out in section 91.402(a) when there is "a dispute concerning title that would affect distribution of payments." *Id.* § 91.402(b)(1).

As a condition to payment of royalties to a payee, a payor is entitled to receive a signed division order containing certain provisions, among which is "the fractional and/or decimal interest in production claimed by [the] payee...." *Id.* § 91.402(c)(1)(C). The purpose of a division order is to provide a procedure for distributing the proceeds from the sale of oil and gas by authorizing and directing to whom and in what proportion to distribute the sale proceeds. *Gavenda v. Strata Energy, Inc.,* 705 S.W.2d 690, 691 (Tex.1986).

■■■ If a payment is withheld in violation of section 91.402, the payor must pay interest to a payee. *Id.* § 91.403(a). The purpose of section 91.403 is to protect royalty owners from intentional payment delays while permitting delays that result from legitimate title disputes. *Concord Oil,* 966 S.W.2d at 461.

The statutory provisions do not define precisely what qualifies as a title dispute for the purpose of suspending royalty payments without incurring a penalty. However, none of the oil company defendants disputed that Neel and Mayo were entitled to at least a one-sixteenth royalty interest; thus, there was no title dispute that "would affect distribution of [these] payments." Further, Killam and Hurd's reliance on Neel and Mayo's refusal to sign a new division order reflecting a one-sixteenth royalty is misplaced. The new division order Killam and Hurd drafted did not reflect the fractional and/or decimal interest in production claimed by Neel and Mayo. *See id.* § 91.402(c)(1)(C). Instead, it reflected the fractional and/or decimal interest in production that Killam and Hurd contended was owned by Neel and Mayo. If Neel and Mayo had signed the new division orders and accepted one-sixteenth royalty payments under the new division orders, they would have waived their rights to the larger amount they

claimed was owed to them. *See Mattalino v. Trinity Petroleum Exploration,* 927 F.Supp. 986, 989 (S.D.Tex.1996) (signing division order is evidence of intent to waive one's rights); *see also Sun Operating Ltd. P'ship v. Oatman,* 911 S.W.2d 749, 756 (Tex.App.-San Antonio 1995, writ denied) (Sun ratified Receiver's Lease when it accepted royalty payments from Oatman for only seven-eighths of the land and executed division orders reflecting that it was entitled to royalties based on only a seven-eighths interest).

Under these circumstances, it would be inequitable to allow Killam and Hurd to withhold payment on those portions of the royalties that they agreed were due. Accordingly, Killam and Hurd owe prejudgment interest on those royalties that were not in dispute.[2]

## STATUTE OF LIMITATIONS

In their cross-issue, Killam and Hurd argue that the statute of limitations precludes Neel and Mayo from recovering those royalties that accrued more than four years before the suit was filed. Neel and Mayo counter that although the statute of limitations would normally prevent the collection of royalties due for the years of 1991 to 1994, Killam and Hurd waived their defense because they acknowledged and promised to pay the debt in the following November 8, 1995 letter written by Killam:

> We are in receipt of the Tolling Agreement with your proposed changes. After further consideration, we have decided not to litigate the issue of overpayment of royalties on the Amoco W # 1

and the AI # 1 gas wells. We believe our agreement with Mr. Neel fairly addressed the royalty overpayment, and I am disappointed that Mr. Mayo did not consider the question of equity when he analyzed the history of overpayment.

> We are in the process of preparing new division orders for the Killam–Hurd Amoco W # 1 well that will credit Suzy Neel Mayo and George E. Neel, Jr. with a combined royalty interest of 6.25% of 8/8ths. Upon receipt of an executed division order, all suspended royalties will be paid. We will continue to interpret your interest in similar royalty deeds as being 6.25% of 8/8ths.

A suit on a debt is barred if it is not commenced within four years of the date the cause of action accrued. TEX. CIV. PRAC. & REM.CODE ANN. § 16.004(a)(3) (Vernon Supp.2002). In order for a written instrument to be sufficient to take a debt otherwise barred out of the operation of the statute of limitations, it must unequivocally and unconditionally acknowledge the justness of the debt and express a willingness to pay. *Bright & Co. v. Holbein Family Mineral Trust,* 995 S.W.2d 742, 745 (Tex.App.-San Antonio 1999, pet. denied); *see also Andrews v. Cohen,* 664 S.W.2d 826, 828–29 (Tex.App.–Tyler 1984, writ ref'd n.r.e.); *Siegel v. McGavock Drilling Co.,* 530 S.W.2d 894, 896 (Tex.Civ. App.-Amarillo 1975, writ ref'd n.r.e.); TEX. CIV. PRAC. & REM.CODE ANN. § 16.065 (Vernon 1967). The effect of the acknowledgment is that it creates a new promise to pay the old debt by acknowledging and agreeing to pay the old debt. *Siegel,* 530 S.W.2d at 896. Once an acknowledgment is executed, the liability of the debtor de-

---

**2.** Killam and Hurd assert this issue is controlled by the Supreme Court's opinion in *Concord Oil,* in which the Court determined section 91.403 prejudgment interest was not due because "there was no doubt that a dispute concerning title exists in this case." 966

S.W.2d at 461. We do not agree that the result in *Concord Oil* controls because in that case, unlike here, the payor did not acknowledge that the payee was entitled to at least a portion of the withheld compensation.

pends not upon the old obligation but upon the new promise as expressed in the acknowledgment. *Id.* If an acknowledgment of the existence of an old debt is qualified by a conditional promise to pay, a promise different from the one so expressed will not be implied and the creditor must fulfill the named condition as a prerequisite to the debtor's liability on the new promise. *Andrews,* 664 S.W.2d at 829. Whether a written instrument sufficiently acknowledges a debt barred by limitations is a question of law. *Bright & Co.,* 995 S.W.2d at 745 (holding that letter clearly acknowledged a debt and implied a promise to pay).

Here, we find that the November 8th letter was not a new promise to pay. None of the oil company defendants (except Killam) or other royalty owners signed the letter, as required by section 16.065. Although Killam acknowledged that a debt was owed, the letter clearly states that the payment of the royalties was conditioned upon Neel and Mayo signing a division order. Killam promised to pay the debt if the division order was signed, but because this condition was never fulfilled, Killam's liability to pay never arose. Accordingly, Neel and Mayo are barred by the statute of limitations from recovering any royalties that accrued more than four years before the date the suit was filed.

### CONCLUSION

We affirm that portion of the trial court's judgment that Neel and Mayo own a fixed one-sixteenth interest in the oil and gas produced. We reverse that portion of the trial court's judgment awarding from Killam and Hurd to Neel and Mayo royalty interests representing one-sixteenth of production from October 1, 1991 to October 28, 1994. We reverse that portion of the trial court's judgment denying Neel and Mayo prejudgment interest. We remand the cause to the trial court for entry of judgment consistent with this opinion.