# DISSENTING OPINION

No. 04-09-00560-CV

William S. **HAUSSER**, Albert F. Hausser, Robert Hausser, Jr. Eugene L. Amos, Jr., Lawrence J. Flume, Jr., Corwin D. Denney Foundation, and Des Cygne Denney Settlement Partners, Ltd., Appellants

v.

Fernando D. **CUELLAR** and Jacob F. Rathmell Jr., Successor Co-Trustees under the Wills of Fernando Cuellar and Inocente T. De Cuellar, and Trustees under Trust Deeds executed by Fernando Cuellar and Inocente T. De Cuellar, Appellees

From the 49th Judicial District Court, Zapata County, Texas
Trial Court No. 6803
Honorable Jose A. Lopez, Judge Presiding

Opinion by:    Marialyn Barnard, Justice
Dissenting opinion by: Sandee Bryan Marion, Justice, joined by Steven C. Hilbig, Justice

Sitting:        Catherine Stone, Chief Justice
               Karen Angelini, Justice
               Sandee Bryan Marion, Justice
               Phylis J. Speedlin, Justice
               Rebecca Simmons, Justice
               Steven C. Hilbig, Justice
               Marialyn Barnard, Justice

Delivered and Filed:  February 2, 2011

I respectfully dissent. In this appeal we are again faced with the issue of how to reconcile an interest specified in the granting clause with a different interest specified in the future lease clause. The Texas Supreme Court's opinion in *Luckel v. White*, 819 S.W.2d 459 (Tex. 1991) does not provide the necessary guidance on this important issue, and with this dissent, I urge the Supreme Court to take up this specific issue and further elaborate on its opinion in *Luckel*.

In *Luckel*, the Court overruled its earlier opinion in *Alford v. Krun*, 671 S.W.2d 870 (Tex. 1984) on the grounds that the *Alford* majority "failed to harmonize the provisions under the four

corners rule and then erred in applying the 'repugnant to the grant' rule in disregard of the future lease clause." *Luckel*, 819 S.W.2d at 464.[1] The *Luckel* Court held that a court's primary duty "when construing such a deed is to ascertain the intent of the parties from all of the language in the deed by a fundamental rule of construction known as the 'four corners' rule." *Id.* at 461. Under this rule a court "seeking to ascertain the intention of the parties, attempts to harmonize all parts of the deed." *Id.* "Even if different parts of the deed appear contradictory or inconsistent, the court must strive to harmonize all of the parts, construing the instrument to give effect to all of its provisions." *Id.* A court should not strike down any part of the deed, "unless there is an irreconcilable conflict wherein one part of the instrument destroys in effect another part thereof." *Id.*

In this case, the granting clause conveys an undivided one-half interest "in and to all of the oil royalty, gas royalty, royalty in casinghead gas and gasoline, and royalty in other minerals in and under, and that may be produced and mined from" certain land described in the deed. The existing lease clause states that the described land is subject to an existing oil and gas lease that "covers and includes one-half (1/2) of all the oil royalty, gas royalty, royalty in casinghead gas and gasoline, and royalty from other minerals or products due and to be paid under the terms of the lease." Finally, the future lease clause provides that upon termination of the existing lease and in the event of any future lease the grantees "shall receive under such future lease or leases one-sixteenth (1/16) part of all oil, gas and other minerals taken and saved from the above described property, under such lease or leases, and shall receive the same out of the royalty therein provided for." At the time the deed was executed it was subject to a lease that provided for a one-eighth royalty interest, which resulted in the payment of a one-sixteenth (1/2 x 1/8)

---

[1] In *Alford*, the Supreme Court gave "effect to the 'controlling language' . . . [of] the granting clause" because an irreconcilable conflict existed between the granting clause and the future lease clause. 671 S.W.2d at 873-74.

royalty to the grantees. When that lease terminated, a new lease was executed which provided for a one-fourth royalty interest. The issue then became how much do the grantees receive under the new lease: one-half of one-fourth or a fixed one-sixteenth? The majority determines the Haussers are entitled to an undivided one-half interest of the one-fourth royalty specified in the new lease. I dissent, in part, because I believe the majority does not properly apply *Luckel*. The majority also disapproves of this court's earlier opinion in *Neel v. Killam Oil Co., Ltd.*, 88 S.W.3d 334 (Tex. App.—San Antonio 2002, pet. denied). Again, I disagree because I believe the panel's analysis in *Neel* was correct and gave effect to all parts of the deed in that case.

The majority here criticizes the *Neel* opinion for looking back to the prior deed; however, the examination of the prior deed in *Neel* merely confirmed the conclusion that Neel and Mayo were entitled to only a one-sixteenth interest in production. The "granting clause" in the Ortiz-Neel deed conveyed a one-half interest in any royalties produced or mined from the land. *Id.* at 340. The deed did not contain a "minimum royalty" clause or "fee development" clause. *Id.* An "existing lease" clause made the deed subject to a pre-existing 1940 lease. *Id.* Under the "lease termination" clause, Neel would receive one-sixteenth of all production as a free royalty if the present lease (which was the 1940 lease) terminated, lapsed or was forfeited. *Id.* Following the "lease termination" clause, the Ortiz-Neel deed contained a "future lease" clause, which provided that, if a future lease is executed, Neel will "receive the mineral interests *described in the preceding paragraph* out of the royalty provided for in" the future lease. (Emphasis added.) *Id.* at 340-41. When the 1940 lease expired, a new lease was executed in 1980, which "granted a one-fourth royalty in the production of oil and gas."

The *Neel* court concluded that, under the Ortiz-Neel deed, Neel received a present interest of one-half of the one-eighth royalty reserved in the 1940 lease and, after expiration of

the 1940 lease, the right to receive one-sixteenth of production from any future leases. *Id.* at 341. The 1980 lease triggered the future lease clause, under which Neel would receive the interests described in the lease termination clause. *Id.* The lease termination clause specified a one-sixteenth interest in production. *Id.* Therefore, harmonizing all parts of the Ortiz-Neel deed together, the *Neel* court concluded the parties intended to convey a fixed one-sixteenth interest in production. *Id.*

In this case, the Escamilla Deed conveyed a one-half interest in "royalties" reserved under the existing 1936 lease. The 1936 lease provided for a one-eighth royalty, which translated to one-sixteenth of gross production. Consistent with this conveyance of one-sixteenth of gross production, the future lease clause conveyed one-sixteenth "of all oil, gas, and other minerals taken and saved from" the property under the 2006 lease. Appling the same analysis used in *Neel* to the Escamilla Deed, I would conclude the Escamilla Deed entitled the Haussers to a fixed one-sixteenth fixed royalty interest in production.


                                                        Sandee Bryan Marion, Justice