**Opinion issued August 31, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-10-01002-CV

————————————

**MIKE BOULANGER, TRUSTEE, ON BEHALF OF WESTLUM TRUST, Appellant**

**V.**

**WASTE MANAGEMENT OF TEXAS, INC., WASTE MANAGEMENT, INC., AND USA WASTE LANDFILL OPERATIONS AND TRANSFER, INC., Appellees**

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-28400**

## OPINION ON REHEARING

Mike Boulanger, as Trustee on behalf of the Westlum Trust, moved for rehearing of our December 15, 2011 opinion and judgment. We deny the motion

for rehearing. To clarify the governing standards of deed interpretation and construction, however, we withdraw our prior opinion and judgment and issue the following opinion and judgment in their stead.

In this dispute regarding the interpretation and construction of a deed, Boulanger and Waste Management of Texas, Inc., Waste Management, Inc., and USA Waste Landfill Operations and Transfer, Inc. (collectively, Waste Management) claim competing title to an abandoned railroad right-of-way. The trial court granted summary judgment in favor of Waste Management. Boulanger appeals, contending that the summary judgment should be reversed because the trial court erred by looking beyond the four corners of the deed at issue, considering construction aids and extrinsic evidence in the absence of any pleading or finding of ambiguity, and failing to recognize the existence of a fact issue as to the ownership of the right-of-way. We affirm the trial court's judgment.

## Background

The Sam Houston Recycling Center sits at the southwest corner of Westview Drive and Lumpkin Road in Houston, Texas. The property consists of two tracts of land: (1) the "Main Tract" of approximately 3.6406 acres and (2) the "Panhandle Tract" of approximately 2.117 acres. Running in a north-south direction between the Main Tract and the Panhandle Tract is the forty-foot-wide railroad right-of-way that is the subject of this property dispute.

2

The Main Tract and the Panhandle Tract originally were part of a larger, 142-acre tract of land owned by C.P. Lumpkin. Lumpkin split the 142 acres into various parcels. The Main Tract and the Panhandle Tract were included in one parcel, which consisted of 14.177 acres. In 1955, Lumpkin conveyed 13.697 acres of the parcel, including the Main and Panhandle Tracts, by deed to Cramerus Realty Company (the Cramerus Deed). The Cramerus Deed identified the property conveyed by metes and bounds description and stated that it was "LESS the following tract of land reserved for railroad right-of-way:"

> BEGINNING at a point in the North line of Tract "F" above from which the Northwest corner of tract "F" bears N. 88 deg. 38' 23" W. 681.93 feet;

> THENCE S. 88 deg. 38' 23" E., along the North line of Tract "F", 40.01 feet to a point;

> THENCE S. 88 deg. 38' 33: W. along the South line of Tract "F" 40.01 ft. to a point;

> THENCE North 522.70 feet to the place of beginning, and containing 0.480 acres of land.

The parties dispute the legal effect of this language. Boulanger argues that the language excluded the right-of-way from the conveyance of the Main and Panhandle Tracts and that Lumpkin (and later his heirs) retained title to the right-of-way until Boulanger acquired it in 2005. In contrast, Waste Management argues that Lumpkin's heirs had no interest to convey to Boulanger because the Cramerus Deed passed fee title to the right-of-way along with the Main and Panhandle Tracts

3

and, through a series of subsequent conveyances, Waste Management acquired the right-of-way in 1991. According to Waste Management, the language at issue served only to notify Cramerus that the land conveyed was burdened by the right-of-way. Waste Management asserts that, because there is no alternate route between the Main and Panhandle Tracts, "if [the right-of-way is not] utilized as part of the Sam Houston Recycling Center, [it] would be a useless, land-locked piece of real estate."

Boulanger sued Waste Management, seeking to enjoin Waste Management's use of the right-of-way and to recover actual and punitive damages for trespass and unjust enrichment. Waste Management generally denied the allegations in Boulanger's petition and filed counterclaims for trespass to try title and suit to quiet title. Before the case proceeded to a jury trial, Waste Management filed a combined no-evidence and traditional motion for partial summary judgment, asserting that Boulanger had no evidence of the ownership element of his trespass claim or, alternatively, that Waste Management had conclusively negated that element.[1] Without stating its reasons, the trial court granted Waste Management's

---

[1] Both of Boulanger's theories of recovery were contingent upon a showing that he holds title to or lawful possession of the right-of-way. To recover damages on his trespass to real property claim, Boulanger must show that (1) he owns or has a lawful right to possess the disputed property, (2) Waste Management entered his land and the entry was physical, intentional, and voluntary, and (3) Waste Management's trespass caused him injury. *See Tex. Woman's Univ. v. The Methodist Hosp.*, 221 S.W.3d 267, 286 (Tex. App.—Houston [1st Dist.] 2006, no

4

motion. Waste Management dismissed its claims against Boulanger, rendering the trial court's partial summary judgment final and appealable.

## Summary Judgment Standard of Review

We review summary judgments de novo and according to well-settled standards. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *City of Galveston v. Tex. Gen. Land Office*, 196 S.W.3d 218, 221 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Waste Management was entitled to a no-evidence summary judgment if, after adequate time for discovery, there was no evidence of one or more essential elements of Boulanger's claim. *See* TEX. R. CIV. P. 166a(i); *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006). To prevail on its its traditional summary judgment motion, however, Waste Management was required to conclusively negate at least one essential element of Boulanger's claim or conclusively establish each element of an affirmative defense. *See* TEX. R. CIV. P. 166a(c); *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *City of Galveston*, 196 S.W.3d at 221. Under both standards, we view all evidence

pet.). "Unjust enrichment occurs when the 'person sought to be charged [has] wrongfully secured a benefit or [has] passively received one which it would [be] unconscionable to retain.'" *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App.—San Antonio 2004, pet. denied) (quoting *City of Corpus v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247, 250 (Tex. App.—Corpus Christi 1987, writ denied)).

in a light favorable to Boulanger and indulge every reasonable inference in his favor. *See Dorsett*, 164 S.W.3d at 661; *City of Galveston*, 196 S.W.3d at 221.

## Deed Construction

The resolution of this appeal turns on the construction of the Cramerus Deed. "As is often true in litigation involving the interpretation and construction of written instruments," both Boulanger and Waste Management insist that the Cramerus Deed is "'plain and unambiguous' and admits of no reasonable meaning other than that for which they contend." *McMahon v. Christmann*, 303 S.W.2d 341, 343 (Tex. 1957). Their disagreement, however, is not limited to a difference of opinion regarding the legal effect of Lumpkin's conveyance; Boulanger and Waste Management also dispute whether the trial court properly applied the law relating to the interpretation and construction of deeds.

Boulanger argues in his second and fourth issues that neither the trial court nor this Court may apply rules of construction or consider extrinsic evidence in the absence of a pleading and finding that the Cramerus Deed is ambiguous. Absent ambiguity, according to Boulanger, courts are bound by the language used in the "four corners" of the deed in determining the property conveyed. Waste Management, however, argues that to construe the Cramerus Deed, the courts may consult construction aids to ascertain the parties' intent and give legal effect to the language used in the conveyance. According to Waste Management, the existence

of an ambiguity is a prerequisite only to the admission of extrinsic evidence. Thus in sum, Boulanger and Waste Management agree that courts should not consider extrinsic evidence before determining that a deed is ambiguous, but they disagree whether rules of construction may be considered before such determination.

The majority of the deed-construction cases cited by Boulanger do not support his position that a pleading and finding of ambiguity must precede the application of rules of construction. In both *Neel v. Killam Oil Co., Ltd.*, 88 S.W.3d 334, 339−41 (Tex. App.—San Antonio 2002, no pet.), *disapproved of by Hausser v. Cuellar*, 345 S.W.3d 462, 470 (Tex. App.—San Antonio 2011, pet. denied) (en banc) and *Cherokee Water Co. v. Freeman*, 33 S.W.3d 334, 353−54 (Tex. App.—Texarkana 2000, no pet.), the court applied rules of construction in a manner inconsistent with Boulanger's position—i.e., the court considered rules of construction to avoid a finding of ambiguity in the deed at issue, not as a method of resolving an already-declared ambiguity. In *Cherokee Water*, the court described only the admission of extrinsic evidence as being dependent on a determination of ambiguity in the deed. *See* 33 S.W.3d at 353. Nevertheless, in his motion for rehearing, Boulanger asserts that a holding contrary to his position would be in direct contradiction of the Eastland Court of Appeals's statement in *Gail v. Berry*, 343 S.W.3d 520, 525 (Tex. App.—Eastland 2011, pet denied), that the rules of construction will not be considered absent an allegation that a deed is ambiguous.

7

That statement, however, follows the Eastland Court of Appeals's own authority adopting a two-step procedure for deciding a deed's meaning: first, that court interprets a deed by applying "rules of interpretation" and second, if application of the rules of interpretation reveals that a deed is ambiguous, the court employs "canons of construction" to give the deed legal effect. *See, e.g.*, *Moon Royalty, LLC v. Boldrick Partners*, 244 S.W.3d 391, 394 (Tex. App.—Eastland 2007, no pet.) (drawing distinction between application of "rules of interpretation" and "canons of construction"); *Stewman Ranch, Inc. v. Double M. Ranch, Ltd.*, 192 S.W.3d 808, 811 (Tex. App.—Eastland 2006, pet. denied). As our sister court of appeals in Tyler has observed, the two-step procedure adopted by the Eastland Court of Appeals is not the method used by other Texas courts, including this Court, in determining whether a deed is ambiguous. *See Elder v. Anadarko E & P Co.*, No. 12-10-00250-CV, 2011 WL 2713817, at *2 (Tex. App.—Tyler July 13, 2011, no pet.) (mem. op.); *see also Buffalo Ranch Co., Ltd. v. Thomason*, 727 S.W.2d 331, 333 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) (applying canons to determine that deed was not ambiguous). "In practice, the courts of Texas and other jurisdictions have used the terms 'interpretation' and 'construction' interchangeably. Consequently, both terms have been used to refer to the rules or canons applied by courts *to determine whether a written instrument is ambiguous*." *Elder*, 2011 WL 2713817, at *2 (emphasis added); *see, e.g.*,

*Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996) (stating that "if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of *construction*, the contract is ambiguous") (emphasis added); *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951) (stating that "a contract is ambiguous only when the application of pertinent rules of *interpretation* to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning") (emphasis added).

What is clear is that intent is the benchmark for judicial interpretation of deeds. "Because 'once a dispute arises over meaning, it can hardly be expected that the parties will agree on what meaning was intended,' courts use canons of construction to help ascertain the parties' intent." *French v. Chevron U.S.A., Inc.*, 896 S.W.2d 795, 797 (Tex. 1995) (quoting *Southland Royalty Co. v. Pan Am. Petroleum Corp.*, 378 S.W.2d 50, 59 (Tex. 1964) (Calvert, C.J., concurring) (recognizing that courts "have built up a system of rules of interpretation and construction to arrive at meaning, ignoring testimony of subjective intent")); *see also Buffalo Ranch Co.*, 727 S.W.2d at 333 (concluding that deed language reserving mineral interest was not ambiguous because it could be "accorded a certain legal meaning by applying appropriate rules of construction"); *Humble Oil & Refining Co. v. Kirkindall*, 119 S.W.2d 731, 733 (Tex. Civ. App.—Beaumont 1938), *aff'd*,

145 S.W.2d 1074 (Tex. 1941) ("The canons of law for the construction of deeds are for the purpose of discovering the intent of the makers."). The "fundamental rule of construction" is the "four corners" rule. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991); *CenterPoint Energy Houston Elec., L.L.P. v. Old TJC Co.*, 177 S.W.3d 425, 430 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). Even if we could discern the actual subjective intent of the parties, it is not that intent that governs the interpretation of the deed. *Luckel*, 819 S.W.2d at 462; *see also J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). Instead, we must discern the intent of the parties as expressed in the deed as a whole, striving to harmonize all of its parts and give effect to all of its provisions. *Luckel*, 819 S.W.2d at 462; *CenterPoint Energy*, 177 S.W.3d at 430.

Nowhere in the cases cited by Boulanger do we find a directive that ambiguity must be found to exist before the rules of construction can be considered in aid of ascertaining the parties' intent. Rather, the absence of ambiguity precludes only the admission and consideration of extrinsic evidence. *See Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 283 (Tex. 1996); *CenterPoint Energy*, 177 S.W.3d at 431 ("A court may consider the parties' interpretations of the contract through extrinsic or parol evidence only after a contract is first determined to be ambiguous."). The courts' use of rules of construction in interpreting and construing deeds has a practical basis. "It avoids

10

the difficulties inherent in the admission of extrinsic evidence. 'Individual adjudication of deeds would lead to disparate results depending on circumstances extraneous to the instrument.' It would also complicate the job of title examiners who would be unable to rely on the written word." *Elder*, 2011 WL 2713817, at *3 (quoting Bruce M. Kramer, *The Sisyphean Task of Interpreting Mineral Deeds and Leases: An Encyclopedia of Canons of Construction*, 24 TEX. TECH. L. REV. 1, 19 (1993)).

The decision of whether an ambiguity exists is a question of law. *See J.M. Davidson*, 128 S.W.3d at 229; *CenterPoint Energy*, 177 S.W.3d at 430. If the deed is worded in such a way that it can be given a definite or certain legal meaning, then it is not ambiguous and the court will be confined to the writing. *See CenterPoint Energy*, 177 S.W.3d at 430–31. A mere disagreement about the proper interpretation of a deed, however, does not make the deed ambiguous; the instrument is ambiguous only if, after application of the rules of construction, the deed is reasonably susceptible to more than one meaning. *See Brown v. Havard*, 593 S.W.2d 939, 942 (Tex. 1980); *Universal C.I.T. Credit Corp.*, 243 S.W.2d at 157; *see also Buffalo Ranch Co.*, 727 S.W.2d at 333 (concluding that deed language reserving mineral interest was not ambiguous because it could be "accorded a certain legal meaning by applying appropriate rules of construction"); *Houchins v. Devon Energy Prod. Co., L.P.*, No. 01-08-00273-CV, 2009 WL

11

3321406, at *4 (Tex. App.—Houston [1st Dist.] Oct. 15, 2009, pet. denied) (mem. op.) (observing that ambiguity arises only after application of established rules of construction leaves deed susceptible to more than one meaning). Likewise, the construction of an unambiguous deed is a question of law, which we review de novo. *See Luckel*, 819 S.W.2d at 461; *CenterPoint Energy*, 177 S.W.3d at 430.

Having concluded that Waste Management states the correct rule for the interpretation and construction of the Cramerus Deed and that the trial court, like this Court, could consider rules of construction even absent a pleading or finding of ambiguity, we overrule Boulanger's second and fourth issues.

**The Cramerus Deed**

Boulanger's remaining issues address the merits of the trial court's summary judgment. Boulanger contends that summary judgment was improper because the trial court misconstrued the plain language of the Cramerus Deed as conveying title to the railroad right-of-way or, alternatively, because of ambiguity in the deed or the existence of fact issues as to the ownership of the right-of-way. Because ownership is the dispositive issue in this case, we must determine whether Lumpkin granted Cramerus fee title to the right-of-way.

A single word gives rise to the parties' differing opinion as to the legal effect of Lumpkin's conveyance: "LESS." The Cramerus Deed conveys a single parcel of property "LESS the [described] tract of land reserved for railroad right-of-way,"

12

which effectively divides the parcel into the Main and Panhandle Tracts abutting the east and west side of the right-of-way. Using dictionaries to define "less" as commonly meaning "devoid of," Boulanger contends the Cramerus Deed excluded the right-of-way from the conveyance of the Main and Panhandle Tracts. Waste Management disagrees that "LESS" excludes the right-of-way and suggests a different construction of the term—namely, one having the effect of conveying fee title to all the land described while notifying Cramerus that the grant is burdened by the railroad right-of-way and reserving the railroad's right to use that land.

Recognizing that "separate ownership of long narrow strips of land, distinct from the land adjoining on each side, is a fruitful source of litigation and disputes," the Texas Supreme Court developed a rule with respect to the legal construction of conveyances like Lumpkin's to Cramerus: "[I]t is presumed that a grantor has no intention of reserving a fee in a narrow strip of land adjoining the land conveyed when it ceases to be of use to him, unless such fee is clearly reserved." *Cantley v. Gulf Prod. Co.*, 143 S.W.2d 912, 915 (Tex. 1940) (presuming that language "keeping" thirty-foot-wide road easement did not reserve title to strip of land underlying easement in absence of evidence of clear intention to do so). Stated differently, "[w]hen an instrument conveys land definitely described in the instrument and then excepts from the conveyance a road, railroad right-of-way or canal right-of-way occupying an easement on, over or across the land conveyed,

the instrument conveys the fee to the entire tract, subject to such right-of-way, unless the deed clearly indicates that the grantor intended to reserve the strip." *Moore v. Rotello*, 719 S.W.2d 372, 375–76 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (concluding that "save and except" language in deed was not express reservation of interest in property, it had no other effect than to say that grant was burdened with railroad right-of-way, and deed conveyed fee title to entire tract of land).

There is no disagreement that the right-of-way at issue is a forty-foot-wide strip of land that adjoins and separates the Main and Panhandle Tracts conveyed in the Cramerus Deed. And, we see no reason why "less" should have a different legal effect than "keeping" or "save and except," as those terms have given rise to the presumption stated above in *Cantley* and *Moore*. *See Cantley*, 143 S.W.2d at 915; *Moore*, 719 S.W.2d at 375–76. Although he asserts that the "evidence shows the [right-of-way] is not a narrow strip of land" and that it has some individual value because "[m]ost lots located in any metropolitan area such as Houston are 50 or so feet wide" and "many lots where townhomes are constructed are only 20 feet in width," Boulanger has not cited to any place in the record where the evidence of such facts appear. Moreover, as we have already determined that the word "less" has special meaning beyond its common dictionary definition, we find no other language in the Cramerus Deed clearly indicating that Lumpkin intended to reserve

the right-of-way for his own use. In the absence of such language, we apply the *Cantley* and *Moore* presumption and determine that the Cramerus Deed is reasonably susceptible to only one construction—i.e., the construction urged by Waste Management. We therefore conclude that the Cramerus Deed unambiguously conveyed fee title to all of the land described therein, including the Main Tract, the Panhandle Tract, and the right-of-way. The property description that follows the word "less" merely served to notify Cramerus that the grant was burdened by the railroad right-of-way.

Boulanger concedes that, if the Cramerus Deed conveyed fee title to the right-of-way, then Waste Management acquired that title under the Waste Management Deeds in 1991, so we need not consider whether the Waste Management Deeds are valid or whether Waste Management's chain of title is complete. Further, because the Cramerus Deed is unambiguous, we will not decide whether the extrinsic evidence attached to the summary judgment motion and response raises an issue of fact as to ownership of the right-of-way. *See CenterPoint Energy*, 177 S.W.3d at 430. Instead, we conclude only that the trial court did not err in granting summary judgment for Waste Management.

We overrule Boulanger's first, third, and fifth issues.

15

**Conclusion**

Having found no error, we affirm the trial court's summary judgment.


Harvey Brown
Justice

Panel consists of Justices Jennings, Sharp, and Brown.