CENTERPOINT ENERGY HOUSTON ELECTRIC, L.L.P., Appellant,

v.

The OLD TJC COMPANY, Appellee.

No. 01–03–00158–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 5, 2005.

Rehearing Overruled Aug. 8, 2005.

J. Mark Breeding, Andrews & Kurth, Charles Black McFarland, Vinson & Elkins, L.L.P., Houston, TX, Richard L. Tate, Tate & Associates, Richmond, TX, H. Dixon Montague, Vinson & Elkins, Houston, TX, for Appellant.

Alan Brandt Daughtry, Houston, TX, For Appellee.

Panel consists of Justices TAFT, JENNINGS, and HANKS.

## OPINION

GEORGE C. HANKS, JR., Justice.

This appeal arises out of a dispute regarding the ownership of a landlocked 60.724–acre tract of undeveloped land located in the Brazos River flood way in southeastern Fort Bend County, Texas. Appellant, CenterPoint Energy Houston Electric, LLC, as successor to Reliant Energy, Incorporated, formerly Houston Lighting & Power Company ("HL & P"), appeals the Agreed Final Judgment Nunc Pro Tunc, in which the trial court denied HL & P's motion for summary judgment seeking fee simple title to the property and granted the motion for summary judgment filed by the appellee, the Old TJC Company, formerly The Johnson Company ("the Old TJC"). In six issues, HL & P contends that the trial court erred (1) in holding that, six years after the Deed was drafted, the Old TJC still owned an interest in the property; (2) in implicitly holding that the interest that the Old TJC reserved in the Special Warranty Deed was a conditional limitation and not a condition subsequent; (3) in holding that the "mere conveyance" of the property to HL & P triggered the Old TJC's claimed interest in the property; (4) in holding that the property "automatically" and immediately reverted to the Old TJC; (5) in denying HL & P's motion for summary judgment; and (6) in granting the Old TJC's cross-motion for summary judgment. We reverse and render.

## Background

On April 21, 1986, the Old TJC executed a Special Warranty Deed ("Original Deed") in which it "GRANTED, SOLD, and CONVEYED" 60.724 acres of land to Fort Bend County. The deed contained the following restriction:

It is expressly provided, agreed and understood that the herein described and conveyed property *shall be used exclusively by [Fort Bend County] for purposes of operating and maintaining the same as a public park for recreational purposes only,* and in the event that

[Fort Bend County] should for any reason fail or cease to use the herein described property as a public park for more than ninety (90) days, then title to *the herein described property shall,* on the ninety-first (91st) day following such cessation or abandonment of use, *revert to and become the property of [the Old TJC], its successors or assigns,* and [Fort Bend County] agrees to execute such deeds or other instruments as may be necessary or appropriate to evidence such reversion of title and to convey the property herein described to [the Old TJC], its successors or assigns.

The restriction on the use of the herein described property as a public park, and the provisions hereof relating to the automatic reversion of title to [the Old TJC] shall remain in full force and effect from the date of execution hereof until the date that is twenty one (21) years after the death of all of the now living decendants [sic] of Ronald Reagan, the president of the United States.

(Emphasis added.) Following the execution of this deed, the Old TJC retained only a reversionary interest in the subject property.

On June 25, 1990, the Old TJC and Fort Bend County executed a "Correction Deed." In its recitals, the Correction Deed referenced the Original Deed and set forth the metes and bounds description of the property, but it did not reference the use restriction contained in the Original Deed. The Correction Deed stated in pertinent part that:

WHEREAS, by deed dated April 21, 1986, (Original Deed), which appears of record under County Clerk File No. 8667669 in the deed records of Fort Bend County, Texas, THE JOHNSON CORPORATION, a Texas corporation, ("Grantor"), GRANTED, SOLD and CONVEYED unto FORT BEND COUNTY, TEXAS, a political subdivision of the State of Texas ("Grantee") all of Grantor's rights, title and interest in and to that certain tract of land therein described as follows, . . . .

The Correction Deed also noted that the metes and bounds description contained in the Original Deed was incorrect and that the parties desired to correct this in the Correction Deed.

WHEREAS, said property description contained in the original deed is incorrect in that the fifth paragraph recites, "THENCE NORTH 86 DEGREES 08 MINUTES, 59 SECOND . . ." and in that said fifth paragraph should recite, "THENCE *SOUTH* 86 DEGREES 08 MINUTES, 59 SECONDS . . . ."; and, WHEREAS, Grantor and Grantee desire to correct the property description contained in the Original Deed so that the public records will show that FORT BEND COUNTY'S rights in and to the deeded lands were intended to be, and are in and to the tract of land hereinafter correctly described; . . . .

The Correction Deed proceeded to grant all of the Old TJC's rights, title and interest in the property to Fort Bend County.

KNOW ALL MEN BY THESE PRESENTS:

That THE JOHNSON CORPORATION, a Texas corporation ("Grantor") for and in the consideration of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration, the sufficiency of which is hereby acknowledged and confessed have GRANTED, SOLD AND CONVEYED, and by these presents do GRANT, SELL and CONVEY unto FORT BEND COUNTY, TEXAS, a political subdivision of the State of Texas ("Grantee"), all of Grantor's rights, title, interest, claim and demand in and to that certain tract of land situated in said

County of Fort Bend and described as follows: ....

The Correction Deed also contained an habendum clause, which stated:

> TO HAVE AND TO HOLD the above described rights, title, interest, claim, and demand, to the said GRANTEE [Fort Bend County], its heirs and assigns forever, so that neither the GRANTOR [the Old TJC], its legal representatives or assigns shall have any right or title to or interest in such property, premises, or appurtenances, or any part thereof, at any time hereafter.

The Correction Deed was "EXECUTED, ACCEPTED AND EFFECTIVE for all purposes as of April 21, 1986 ...."

On February 12, 1996, HL & P sued Fort Bend County and the Old TJC in an attempt to seek "declaration of the property interests" owned by the County and the Old TJC resulting from the 1986 and 1990 deeds. It also attempted to establish a "claim of a property interest as to a portion of the land in controversy and for condemnation thereof in favor of HL & P." In its petition, HL & P explained that it was in the process of establishing a railway or railroad spur terminating at one of its electric generation plants in Fort Bend County. In connection with the rail spur project, HL & P determined that it was necessary to excavate soil and clay from areas near to the rail spur easement in order to construct the railroad. The property that was the subject of the Original and Correction Deeds was ideally suited for the excavation project.

In response, among other things, the Old TJC filed a plea to the jurisdiction in which it asserted that, because HL & P had no ownership interest in the property, the case should be dismissed. Subject to its other pleadings, the Old TJC filed counterclaims seeking, among other things, declaratory relief determining ownership of the property.

The next week, HL & P nonsuited all of its "claims stated in its Original Petition." On the same day, HL & P bought the property from Fort Bend County.[1] After it purchased the property from Fort Bend County, HL & P filed a new petition that, among other things, responded to the Old TJC's jurisdictional challenge. Both parties filed competing motions for summary judgment.

In an Agreed Final Judgment Nunc Pro Tunc,[2] the trial court determined that, "as of April 12, 1996, Old TJC owned a reversionary interest in the 60.724–acre tract .... The Court also determined that Old TJC's reversionary interest was triggered by Fort Bend County on April 12, 1996, thereby causing title to the 60.724–acre tract to revert automatically to Old TJC on that date." The claims regarding the title to the property were severed, and the order was made final and appealable.

### Summary Judgment Standard of Review

In a traditional summary judgment, the movant bears the burden of proof, and all doubts concerning the existence of a genuine issue of fact must be resolved against the movant. TEX.R. CIV. P. 166a(c); *Roskey v. Tex. Health Facilities Comm'n*, 639 S.W.2d 302, 303 (Tex.1982). Once the movant proves a right to a summary judgment, the burden shifts to the nonmovant to present evidence creating genuine issues of material fact. *Nixon v. Mr. Prop.*

---

1. Fort Bend County nonsuited the counterclaims that it had filed, thus removing itself from this case entirely.

2. The nunc pro tunc resulted from some "incorrect or marred exhibits" that were attached to the trial court's final judgment.

*Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985).

When, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment proof presented by both sides and determine all questions presented. *See Comm'rs Court v. Agan,* 940 S.W.2d 77, 81 (Tex.1997); *Admiral Ins. Co. v. Trident NGL, Inc.,* 988 S.W.2d 451, 453 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). If we find error, we must render the judgment the trial court should have entered. *Agan,* 940 S.W.2d at 81.

### Deed Construction

■■■ In this case, the resolution of the competing motions for summary judgment turns on the construction of the language of the Original and Correction Deeds. The construction of an unambiguous contract is a question of law, which is reviewed de novo. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 650–51 (Tex.1999). It is a well-settled rule of law that, in the construction of written instruments, all instruments in a chain of title, when referred to in a deed or any instrument conveying an interest in real property, will be read into it. *Dixon v. Amoco Prod. Co.,* 150 S.W.3d 191, 194 (Tex.App.-Tyler 2004, no pet.); *Harris v. Windsor,* 279 S.W.2d 648, 649 (Tex.App.-Texarkana 1955), *aff'd,* 156 Tex. 324, 294 S.W.2d 798 (1956).

■■■ Our primary concern in construing a deed is to ascertain the true intent of the parties as expressed in the instrument. *See Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994). To determine the parties' intent, extrinsic evidence is admissible only when an ambiguity appears on the face of the deed, in a suit for reformation, or when a party alleges fraud, accident or mistake. *See Ulbricht v. Friedsam,* 159 Tex. 607, 325 S.W.2d 669, 673 (1959); *Richardson v. Hart,* 143 Tex. 392, 185 S.W.2d 563, 564 (1945). In this case, because the Old TJC did not seek reformation and also did not allege fraud, accident, or mistake, there must be an ambiguity in the deed before we may consider affidavits and correspondence attached as summary judgment evidence. *See Rutherford v. Randal,* 593 S.W.2d 949, 953 (Tex.1980).[3] Whether a contract is ambiguous is also a question of law. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996). To determine whether a contract is ambiguous, we look at the agreement as a whole in light of the circumstances present when the parties entered into the contract. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995). We examine and consider the entire writing in an effort to harmonize and to give effect to all the provisions of the contract so that none will be rendered meaningless. *Forbau,* 876 S.W.2d at 133–34. No single provision will control; rather, all provisions must be considered with reference to the whole instrument. *Id.*

■■■ If a written contract is worded in such a way that it can be given a

---

**3.** The Old TJC never pleaded mutual mistake. Although it alluded to mistake in its "Factual Statement" portion of its Fourth Amended Counterclaim, the Old TJC never pleaded "mistake" in its answer. Rule 94 requires the parties to specifically plead matters that are affirmative defenses to matters pleaded in a pleading filed by an opponent. *First Bank of* *Deer Park v. Harris County,* 804 S.W.2d 588, 593 (Tex.App.-Houston [1st Dist.] 1991, no writ). By case law, mutual mistake has been identified as an affirmative defense that must also be pled. *See Durham v. Uvalde Rock Asphalt Co.,* 599 S.W.2d 866, 869 (Tex.App.-San Antonio 1980, no writ).

definite or certain legal meaning, then the contract is not ambiguous. *CBI Indus.*, 907 S.W.2d at 520. A contract is ambiguous only if its meaning is uncertain or if it is subject to two or more reasonable interpretations. *Id.* An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. *Forbau*, 876 S.W.2d at 134.

 Moreover, we may not consider extrinsic evidence to contradict or to vary the meaning of unambiguous language in a written contract in order to create an ambiguity. *Sears, Roebuck & Co. v. Commercial Union Ins. Corp.*, 982 S.W.2d 151, 154 (Tex.App.-Houston [1st Dist.] 1998, no pet.). A court may consider the parties' interpretations of the contract through extrinsic or parol evidence only after a contract is first determined to be ambiguous. *See Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 283 (Tex. 1996). An "ambiguity must become evident when the contract is read in context of the surrounding circumstances, not after parol evidence of intent is admitted to create an ambiguity." *CBI Indus.*, 907 S.W.2d at 521.

 An ambiguity in a contract may be said to be "patent" or "latent." *Id.* at 520. A patent ambiguity is evident on the face of the contract. *Id.* A latent ambiguity arises when a contract that is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter. *Id.*[4] If a latent ambiguity arises from this application, parol evidence is admissible for the purpose of ascertaining the true intention of the parties as expressed in the agreement. *Id.* When a

latent ambiguity arises, the focus shifts to the facts and circumstances under which the agreement was made. *GTE Mobilnet of South Tex. Ltd. P'ship v. Telecell Cellular, Inc.*, 955 S.W.2d 286, 290 (Tex.App.-Houston [1st Dist.] 1997, pet. denied). A latent ambiguity exists when the contract appears to convey a sensible meaning on its face, but it cannot be carried out without further clarification. *See CBI Indus.*, 907 S.W.2d at 520; *Eckels v. Davis*, 111 S.W.3d 687, 695 (Tex.App.-Fort Worth 2003, pet. denied).

## Old TJC's Cross–Motion for Partial Summary Judgment

In its Cross–Motion for Partial Summary Judgment, the Old TJC argued that HL & P's motion for summary judgment was without merit because, "based on the affidavits attached" to the motion,[5] the facts "indisputably" established (1) that the 1990 Correction Deed was not intended to, nor did it, affect the Old TJC's reverter interest contained in the 1986 Deed because it "clearly intended the 1990 Correction Deed only to correct the metes and bounds description in the 1986 Special Warranty Deed" and the latent ambiguity in the Correction Deed allowed the introduction of extrinsic evidence; and (2) that Fort Bend County, by its actions on April 12, 1996, triggered the reverter provision in the 1986 Deed causing title to the 60.724 acres to revert automatically to the Old TJC.

### Construction of the Correction Deed

 To construe the rights of the Old TJC and Fort Bend County under the Correction Deed, we must first read it

---

4. For example, if a contract called for goods to be delivered to "the green house on Pecan Street," and there were in fact two green houses on the street, it would be latently ambiguous. *Id.* at n. 4.

5. As summary judgment evidence, the Old TJC attached six affidavits and multiple letters from those involved in the drafting and execution of the two Deeds.

together with the Original Deed to which it specifically references. *See Dixon*, 150 S.W.3d at 194; *Harris*, 279 S.W.2d at 649. It is well established under Texas law that a party cannot convey to another a greater interest in a property than it possesses. *See Morris v. Eddins*, 18 Tex.Civ.App. 38, 44 S.W. 203, 204 (1898).

■ Pursuant to the plain language of the Original Deed, the Old TJC granted all of its "rights, title, and interest" in the subject property to Fort Bend County *and only retained a reversionary interest in the property*. The Old TJC's subsequent grant of all of its "rights, title, and interest" to the property in the Correction Deed could only pertain to its reversionary interest, nothing more. Accordingly, following the execution of the Correction Deed, the Old TJC retained no interest in the subject property.

■ In its Cross–Motion for Summary Judgment, the Old TJC attempted to introduce extrinsic evidence that would prove otherwise and argued that "any latent ambiguity in the 1990 Correction Deed allows for the introduction of extrinsic evidence of the grantor's intent to retain a reverter interest in the property." The Old TJC asserts that there is a latent ambiguity in the Deeds because the 1990 Correction Deed "incorrectly states that the 1986 Special Warranty Deed conveyed 'all of Grantor's rights, title, and interest in and to' the Property, while, on the face of the 1986 Deed, it stated that the grantor retained a reverter interest."

However, our review of a latent-ambiguity argument does not hinge on whether the deed "incorrectly states" a conveyance. Rather, we must determine whether the deed, as it appears, can be carried out without further clarification. *See CBI Indus.*, 907 S.W.2d at 520; *Eckels*, 111 S.W.3d at 695. Furthermore, in construing the language of deeds, we do not use

parol evidence to create ambiguity when none exists. *Commercial Union Ins. Corp.*, 982 S.W.2d at 154.

Here, the Correction Deed can be performed as written and does not require further clarification. When both deeds are read together, the Correction Deed's recital language cannot be logically interpreted as implying that the Original Deed did not contain a use restriction. Accordingly, we hold that there is no latent ambiguity in the 1990 Correction Deed and, because the Old TJC did not plead fraud, accident, or mistake, the trial court should not have considered extrinsic evidence in its contrary determination below. Based on the unambiguous language of the Deeds, following the execution of the Correction Deed, the Old TJC retained no interest in the subject property.

## Legal Effect of Correction Deed

In its cross-motion for partial summary judgment, the Old TJC asserted that the Correction Deed "was entitled a 'Correction Deed' for a reason, and its recitals clearly indicate that its sole intent was to do nothing other than that which its title suggests—to correct the property description—and not to convey a greater interest in the property." In support of this position, the Old TJC contended that its case was "indistinguishable" from the facts in *Parker v. McKinnon*, 353 S.W.2d 954 (Tex. App.-Amarillo 1962, writ ref'd n.r.e.).

In *Parker*, which concerned an action in trespass to try title to an undivided one-half mineral interest in a section of land, all parties claimed under a common source of title. *Id.* at 954. Parker claimed title through a correction deed, and McKinnon claimed title through a predecessor title. *Id.* at 954–55. The correction deed neglected to mention the division of the mineral interest in the property that had previously been divided in the original deed.

*Id.* at 955. Neither party contended that the correction deed was ambiguous, and the Amarillo Court of Appeals held that, when read together with the original deed, the correction deed by its own terms was executed "for the purpose of correcting an error in a former deed." *Id.* at 956. The court concluded that "the correction deed is looked to in aid of the description given in the prior deed, and as between the parties thereto the second deed relates back and becomes effective as of the date of the first deed." *Id.*

Here, unlike in *Parker,* the Correction Deed addressed more than "correcting an error." It stated "WHEREAS, Grantor [the TJC] and Grantee [Fort Bend County] desire to correct the property description contained in the Original Deed so that the public records will show that FORT BEND COUNTY'S rights in and to the deeded lands were and intended to be, and are in and to the tract of land hereinafter correctly described; ...." Following this statement is essentially a rewording of the entire deed. There is not simply a correct statement of the metes and bounds description of the property. In fact, immediately after the revised metes and bounds description of the property, the correction deed included a new habendum clause that stated

> TO HAVE AND TO HOLD the above described rights, title, interest, claim, and demand, to the said GRANTEE [Fort Bend County], its heirs and assigns forever, so that neither the GRANTOR [the Old TJC], its legal representatives or assigns shall have any right or title to or interest in such prop-

erty, premises, or appurtenances, or any party thereof, at any time hereafter.

The correction deed in *Parker* is substantially different from the Correction Deed before us because, here, both the granting clause and the habendum clause express a clear intent that the Old TJC be divested of all of its claim to the property, including the interest that had been reserved in the 1986 Deed. Entitling the 1990 Deed a "Correction Deed" neither rendered these provisions meaningless nor altered the principle that the meaning of the instrument must be determined from review of the deed's four corners and application of the rules of construction. Regardless of what they *meant to say,* effect must be given to what the parties *did say* in the 1990 Deed. Furthermore, *Parker* does not stand for the proposition that "correction deeds" can be used only to correct a property's description. The court simply held that, in *Parker,* the "language clearly indicates the correction deed was simply intended to correct the description of the land conveyed in the prior deed." *Id.* That is not the case with the Correction Deed before us.[6]

The Old TJC also relies on *Joe T. Garcia's Enterprises v. Snadon,* 751 S.W.2d 914 (Tex.App.-Dallas 1988, writ denied) to support its position that a correction deed can correct only a property description. In *Snadon,* the case related to restrictive covenants on a 2.3–acre tract of land originally owned by Snadon in Dallas County. *Id.* at 915. Snadon conveyed his property to King and Simpson free of any restrictive covenants. *Id.* Two months later, a "Correction Warranty Deed," signed only by Snadon, was filed in the deed records in

---

6. Similarly, the Old TJC's reliance on the holdings in *Borden v. Hall,* 255 S.W.2d 920 (Tex.Civ.App.-Beaumont 1951, writ ref'd n.r.e.) and *DeWitt Cty. Elec. Coop., Inc. v. Parks,* 1 S.W.3d 96 (Tex.1999) for this same proposition is misplaced. In both of those cases, the correction deeds, unlike this case, did not go on to include extensive unambiguous language conveying rights, title or interest in the property or including an habendum clause.

Dallas County. *Id.* The correction deed was to correct an "erroneously omitted" restriction that the land be used for a "modern first class restaurant." *Id.* Through a series of transactions, Garcia, who purchased the property from King and Simpson "subject to the restrictive covenants," filed an action for declaratory judgment that the restrictive covenants on the land were invalid. *Id.* at 915–16. The Dallas Court of Appeals reversed the trial court and held that "a correction deed is executed and recorded for the unique purpose of correcting a scrivener's error in the description of the property." *Id.* at 916. We disagree with the Dallas Court of Appeals' narrow reading of this term, and we do not read the cases cited by that court to support this proposition.[7]

■■■ Contrary to the cases cited by the Old TJC, in *Halbert v. Green,* 156 Tex. 223, 293 S.W.2d 848 (1956), the Texas Supreme Court addressed a case in which a "correction deed" appeared "to have been to change the nature of the estate granted from an interest in the minerals to an interest in royalty, to change the fractional interest ... to the oil and gas ... and to cut down the interest from one in perpetuity to a term interest...." *Id.* at 851. The "correction deed ... changed completely the nature of the estate conveyed to and owned by the respondents." *Id.* The Texas Supreme Court never mentioned the significance of the *title* of the deed. There is no declaration that "a correction deed is executed and recorded for the unique purpose of correcting a scrivener's error in the description of the property." Therefore, we refuse to follow *Snadon,* and we hold that a correction deed can do more than simply correct a scrivener's error in the description of the property.

## HL & P's Motion for Summary Judgment

In its motion for summary judgment, HL & P asked the trial court to declare that the Old TJC owned no compensable interest in the property that HL & P purchased from Fort Bend County. Specifically, it asserted that (1) the effect of the 1990 deed was, as stated in the deed, to grant "all of [the Old TJC's] rights, title, interest, claim and demand" to the property "so that neither [the Old TJC], its legal representatives or assigns shall have any right or title or interest in such property ... at any time hereafter"; (2) the combined effect of the 1986 and 1990 deeds was to grant fee simple title to the surface estate of the property to Fort Bend County, effective as of April 21, 1986; the limitation language in the 1986 deed was "relieved by the retroactive grant and habendum language in the second deed"; and (3) HL & P purchased the land owned by Fort Bend County, and HL & P took it free of any claims by the Old TJC. For the reasons set out above, we agree with HL & P's position.

After a de novo review of the 1986 Deed and 1990 Correction Deed, we hold that, because the Deeds are not ambiguous, and because the Old TJC did not plead fraud, accident, or mistake, we cannot consider extrinsic evidence. We hold that the 1990 Correction Deed created an unrestricted conveyance to Fort Bend County and the trial court erred in granting the Old TJC's motion for summary judgment and in de-

7. The *Snadon* court cited the following cases for the proposition that correction deeds can correct only property description errors: *Wilson v. Dearing, Inc.,* 415 S.W.2d 475 (Tex. App.-Eastland 1967, no writ) (correction deed dealt only with property description, but case does not restrict correction deeds to such); *Parker,* 353 S.W.2d at 955 (same); *Fenn v. Boxwell,* 312 S.W.2d 536 (Tex.App.-Amarillo 1958, writ ref'd n.r.e.) (same).

nying HL & P's motion for summary judgment.

We sustain HL & P's first, fifth, and sixth issues.

### Conclusion

Having sustained HL & P's first, fifth, and sixth issues and having held that the trial court erred in granting the Old TJC's summary judgment motion and in denying HL & P's summary judgment motion, we need not address HL & P's second, third, fourth issues addressing the reversionary interest. We reverse the trial court's judgment and render judgment in favor of HL & P.