Affirmed and Memorandum Opinion filed December 18, 2007








Affirmed and Memorandum Opinion filed December 18, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00211-CV

____________

 

FEDGESS SHOPPING CENTERS, LTD., Appellant

 

V.

 

MNC SSP, INC.; MNC MCT, INC.; MNC
MEMORIAL CITY TERRACE, L.P.; AND MNC SPRING SHADOWS PLACE, L.P., Appellees

 



 

On Appeal from the 190th
District Court

Harris County, Texas

Trial Court Cause No. 2006-02381

 



 

M E M O R
A N D U M   O P I N I O N

This
appeal arises out of a dispute over the proper disposition of funds held in
escrow pursuant to a sale of real property.  Appellant, FedGess Shopping
Centers, Ltd. (AFedGess@), appeals a summary judgment in favor of appellees, MNC SSP,
Inc., MNC MCT, Inc., MNC Memorial City Terrace, L.P., and MNC Spring Shadows
Place, L.P. (collectively AMNC@).  We affirm.








I. 
BACKGROUND

FedGess
owned two tracts of land, one known as the I-10 Gessner Shopping Center (the AProperty@), and the other the Federal East
Plaza Shopping Center.  MNC Terrace at Willowbrook, L.P. (AWillowbrook@) became interested in acquiring the
Property.  During negotiations with Willowbrook, the Texas Department of
Transportation (ATXDOT@) was conducting a condemnation proceeding and sought to take
a portion of the Property (the ATXDOT Tract@).  TXDOT first offered $1,975,850 to compensate FedGess for
the taking of the TXDOT Tract, but FedGess declined the offer and hired
attorney Stephen I. Adler to obtain a higher award.  Adler and FedGess executed
an attorney=s fees contract that would pay Adler twenty-five percent of the amount he
obtained for the TXDOT Tract above TXDOT=s original offer of $1,975,850. 
Adler=s efforts prompted TXDOT to make
another offer in the amount of $2,285,761.  

On
January 14, 2005, Willowbrook and FedGess executed a Purchase and Sale
Agreement (the APSA@); Willowbrook immediately assigned its interest to MNC.  
While the sale of the Property was pending, it became clear that the
condemnation proceedings would not be concluded prior to closing. 
Additionally, the parties anticipated that the condemnation award would exceed
the amount of the second $2.2 million offer.  In response, FedGess and MNC
signed an amendment to the PSA and an escrow agreement (the AEscrow Agreement@).  The purpose of the PSA amendment
and the Escrow Agreement was to ensure that FedGess would receive a fair value
of the TXDOT Tract award in the condemnation proceeding, which the parties
believed was worth at least $4,000,000.








Pursuant
to the amendment, MNC agreed to pay FedGess $2.2 million for the TXDOT Tract at
closing, and agreed to deposit an additional $1.8 million in an interest
bearing escrow account, subject to the terms of the Escrow Agreement.  The
amendment also required MNC to hire Dixon Montague of Vinson & Elkins to
represent MNC in the condemnation proceeding after closing on the Property. 
(Prior to closing on the Property, Adler had represented FedGess in the
condemnation proceeding.)  

According
to the relevant portions of the Escrow Agreement, FedGess was entitled to the
$1.8 million (plus interest) in escrow less legal fees and expenses associated
with the condemnation proceeding after closing if the condemnation award was
more than $4 million.  Before the condemnation proceeding was settled with
TXDOT, FedGess and MNC closed on the Property, and $1.8 million was deposited
in an escrow account with Alamo Title Company (AAlamo@).  MNC did not hire Montague; Adler
ultimately settled the condemnation proceeding for $4,510.844.  MNC paid Adler=s fee at the closing of the final
condemnation settlement.  Thereafter, FedGess refused to allow Adler=s post-closing attorney=s fees to be deducted from the $1.8
million (plus interest) escrow account.  It based its refusal on MNC=s failure to hire Montague.  As a
result, this lawsuit arose over the disposition of the funds held in escrow by
Alamo and whether Adler=s post-closing attorney=s fees were to be paid by MNC or by
FedGess from the escrow deposit.

FedGess
filed suit against MNC for breach of contract and sought a declaratory judgment
regarding the rights of the parties under the PSA, the PSA amendment, and the
Escrow Agreement.  MNC counter-claimed for breach of contract and declaratory
judgment.  Both parties moved for summary judgment.  The trial court denied
FedGess=s motion for summary judgment and
granted MNC=s summary judgment motion.  The trial court found that FedGess was
obligated to pay MNC, from the escrow deposit, all of Adler=s attorney=s fees and expenses, including his
post-closing fees and expenses, associated with the condemnation proceeding.








On
appeal, FedGess argues that the trial court erred in granting MNC=s motion for summary judgment
because: (1) appellant=s affirmative defense of prior material breach is a question
of fact for the jury; and (2) the PSA amendment and the Escrow Agreement are
ambiguous regarding which party is required to pay post-closing attorney=s fees since Montague was not hired
for the condemnation proceeding.  

II. 
STANDARDS OF REVIEW

Summary
judgment under rule 166a(c) is proper only when a movant establishes that there
is no genuine issue of material fact and that he is entitled to judgment as a
matter of law.  Tex. R. Civ. P. 166a(c); Randall=s Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). 
We review a summary judgment de novo.  Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005).  A defendant is entitled to summary judgment
if the evidence disproves as a matter of law at least one element of each of
the plaintiff=s causes of action or if the evidence conclusively establishes all
elements of an affirmative defense.  See Randall=s, 891 S.W.2d at 644.  

When
both parties, as here, move for summary judgment on the same issues and the
trial court grants one motion and denies the other, the reviewing court
considers the summary judgment evidence presented by both sides, determines all
questions presented, and renders the judgment the trial court should have
rendered.  Dorsett, 164 S.W.3d at 661; FM Props. Operating Co. v.
City of Austin, 22 S.W.3d 868, 872 (Tex. 2000).   In reviewing a summary
judgment, we must indulge every reasonable inference in favor of the nonmovant
and resolve any doubts in its favor.  Randall=s, 891 S.W.2d at 644; Lawson v. B Four Corp.,
888 S.W.2d 31, 33 (Tex. App.CHouston [1st Dist.] 1994, writ denied).  Declaratory
judgments decided by summary judgment are reviewed under the same standards of
review that govern summary judgments generally.  Lidawi v. Progressive
County Mut. Ins. Co., 112 S.W.3d 725, 730 (Tex. App.CHouston [14th Dist.] 2003, no pet.). 


III. 
AFFIRMATIVE DEFENSE








In
FedGess=s first issue, it argues that the
trial court erred in granting MNC=s motion for summary judgment because
FedGess=s affirmative defense of prior
material breach is a question of fact for the jury.  More specifically, FedGess
contends that MNC breached the PSA amendment and the escrow agreement when if
failed to hire Montague after closing.  According to FedGess, it was material
to the PSA amendment and the Escrow Agreement that Montague (not Adler)
prosecute the condemnation proceeding.  Materiality arises from the facts that
(1) FedGess considered Montague the best condemnation attorney in the State of
Texas, and (2) FedGess wanted to recover as high an amount as possible from
TXDOT in the condemnation proceeding.  FedGess argues that a jury is required
to determine whether MNC=s breach was material.  

A party
breaches a contract when it neglects or refuses to perform a contractual
obligation.  Mays v. Pierce, 203 S.W.3d 564, 575 (Tex. App.CHouston [14th Dist.] 2006, pet.
denied).  If the breach is material, the other party is excused from further
performance of the contract.  See Hernandez v. Gulf Group Lloyds, 875
S.W.2d 691, 692 (Tex. 1994).  Texas courts apply the considerations set forth
in Restatement (Second) of Contracts ' 241(a) (1981) in determining whether
the breach was material.  Mustang Pipeline Co., Inc v. Driver Pipeline Co.,
Inc., 134 S.W.3d 195, 199 (Tex. 2004).  The factors are:

(1) the extent to which the injured party will be deprived of the
benefit which he reasonably expected;

(2) the extent to which the injured party can be adequately compensated
for the part of that benefit of which he will be deprived;

(3) the extent to which the party failing to perform or to offer
performance will suffer forfeiture;

(4) the likelihood that the party failing to perform or to offer to
perform will cure his failure, taking account of all the circumstances
including any reasonable assurances; and 

(5) the extent to which the behavior of the party failing to perform or
to offer to perform comports with standards of good faith and fair dealing.

Id.; Restatement
(Second) of Contracts ' 241(a). 








            A court=s primarily consideration in
determining the materiality of a breach is the extent to which the
non-breaching party will be deprived of the benefit it reasonably could have
anticipated had the breach not occurred.  Hernandez, 875 S.W.2d at 693. 
The less the non-breaching party is deprived of the expected benefits, the less
likelihood the breach is material.  Id.          In the present case,
appellant failed to produce evidence that raises a disputed fact issue as to
whether appellees= breach caused it to be deprived of the benefit it reasonably
anticipated. FedGess anticipated a condemnation award exceeding $4 million; MNC
settled the condemnation proceeding for $4.5 million.  Though the issue of
whether a breach rises to the level of a material breach is generally a fact
question, appellant must still produce evidence showing deprivation of the
anticipated benefit to put this material fact in dispute.  See Seale v.
Nichols, 505 S.W.2d 251, 253-54 (Tex. 1974); Richardson v. Office Bldgs.
of Houston, 704 S.W.2d 373, 376 (Tex. App.CHouston [14th Dist.] 1985, no writ)
(to show there was a disputed fact issue to preclude summary judgment,
appellant was required to offer summary judgment proof on each element of the
affirmative defense).   Here, FedGess has failed to prove the existence of a
fact issue on the question of materiality.  It simply makes conclusory
statements that the breach was material because it considered Montague the best
condemnation attorney in Texas.  FedGess produced no evidence showing how it
was materially injured by Adler=s representation, or how it was deprived of the benefit it
reasonably could have anticipated had Montague been hired.  Instead, the record
reflects that FedGess received what it reasonably anticipated: a condemnation
award exceeding $4 million.  Because FedGess has failed to produce evidence
implicating materiality, there is no disputed fact issue as to whether MNC
committed a material breach.  See id.  Accordingly, the trial
court did not err is granting summary judgment.  We overrule FedGess=s first issue. 








IV. 
AMBIGUITY

In
FedGess=s second issue, it argues that the
trial court erred in granting MNC=s motion for summary judgment because
the PSA amendment and escrow agreement are ambiguous regarding which party is
required to pay post-closing attorney=s fees if Montague is not hired for
the condemnation proceeding.  

The law
in regard to contract interpretation is clear and well-settled.  The
interpretation of an unambiguous contract is a question of law, which is
reviewed de novo.  MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,
995 S.W.2d 647, 650-51 (Tex. 1999).  Whether a contract is ambiguous is also a
question of law.  Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,
940 S.W.2d 587, 589 (Tex. 1996).  To determine whether a contract is ambiguous,
we look at the agreement as a whole in light of the circumstances present when
the parties entered into the contract.  Nat=l Union Fire Ins. Co. v. CBI Indus.,
Inc., 907 S.W.2d
517, 520 (Tex. 1995).  We examine and consider the entire writing in an effort
to harmonize and to give effect to all the provisions of the contract so that
none will be rendered meaningless.  Forbau v. Aetna Life Ins. Co., 876
S.W.2d 132, 133-35 (Tex. 1994); CenterPoint Energy Houston Elec., L.L.P. v.
Old TJC Co., 177 S.W.3d 425, 430 (Tex. App.CHouston [1st Dist.] 2005, pet denied). 
No single provision will control; rather, all provisions must be considered
with reference to the whole instrument.  Forbau, 876 S.W.2d at 134; Old
TJC, 177 S.W.3d at 430.








Our
primary concern in construing a written contract is to ascertain the true
intent of the parties as expressed in the instrument.  Forbau, 876
S.W.2d at 133; Lone Star Heat Treating Co., Ltd v. Liberty Mut. Fire Ins.
Co., 233 S.W.3d 524, 527 (Tex. App.CHouston [14th Dist.] 2007, no pet.). 
If a contract is worded in such a way that it can be given a definite or
certain legal meaning, then the contract is not ambiguous.  CBI Indus.,
907 S.W.2d at 520.  A contract will become ambiguous only if its meaning is
uncertain or if it is subject to two or more reasonable interpretations.  Id. 
An ambiguity does not arise simply because the parties advance conflicting
interpretations of the contract.  Forbau, 876 S.W.2d at 134.  

FedGess
argues that the PSA amendment and the Escrow Agreement are ambiguous because
the parties offer two interpretations, one that the post-closing legal fees and
expenses incurred by anyone other than Montague are to be paid by MNC and the
other that all post-closing legal fees and expenses are to be paid by FedGess,
regardless of who is hired to prosecute the condemnation proceeding.  However,
an ambiguity does not arise simply because the parties advance conflicting
interpretations of the contract.  Id.  Our primary concern is to
ascertain the true intent of the parties as expressed in the instrument; we
examine and consider the entire writing in an effort to harmonize and to give
effect to all the provisions of the contract.  Forbau, 876 S.W.2d at
133-34.  The relevant portions of the PSA amendment reads:

because of
the pending finality of the Existing Gessner Condemnation and because it is
anticipated the total amount of the award will exceed $4,000,000.00, Purchaser
hereby agrees to escrow at closing an additional sum of One Million Eight
Hundred Thousand Dollars (1,800,000.00) (the AEscrow Deposit@) with the
Seller=s Title Company pursuant to the terms of an Escrow
Agreement agreed to by Seller and Purchaser and Seller=s Title Company as conditional purchase proceeds
pending determination and receipt of the final award (the AAward@) paid by TXDOT
for taking the TXDOT Tract.  In addition . . . 

 

Seller
shall, at Seller=s expense, pay all legal fees, costs and expenses,
appraiser fees and other costs and expenses associated with the Existing
Gessner Condemnation incurred prior to the date of Closing including but not
limited to legal fees of Stephen Adler.  Purchaser shall hire Dixon Montague of
Vinson & Elkins to represent Purchaser in the Existing Gessner
Condemnation.  Dixon Montague=s fees shall be
30% of the amount of the Condemnation Award on the existing condemnation in
excess of $2,000,000.00 and such fees and all expenses related to the Existing
Gessner Condemnation shall be paid out of the Escrow Deposit before any amount
is paid to Seller.








The
relevant portion of the Escrow Agreement reads:      

In the
event that the condemnation award (the AAward@) in the Existing Gessner Condemnation is $2,200,000
or less, the entire amount of the Escrow Deposit shall be paid to Buyer. In the
event that the award is greater than $2,200,000 and not more than $4,000,000,
the amount of the Award (less $2,200,000 less all expenses incurred in
connection with the Existing Gessner Condemnation not previously paid by Seller
including but not limited to fees due to Stephen Adler) shall be paid to
Seller, and the remainder of the Escrow Deposit shall be paid to Buyer.  In the
event the amount of the Award is greater than $4,000,000 then the entire Escrow
Deposit (less all other expenses incurred in connection with the Existing
Gessner Condemnation not previously paid by Seller including but not limited to
fees due to Stephen Adler) shall be paid to Seller and the remainder of the
Escrow Deposit shall be paid to Buyer.  

It is
undisputed that of the three scenarios regarding disposition of the escrow
funds and legal fees, the third scenario is controlling in this case. 
Importantly, the Escrow Agreement provided that FedGess would pay all legal
fees and expenses in the second scenario (an award between $2.2 million and $4
million) and in the third scenario (an award over $4 million).  Both agreements
clearly reflect that the parties intended to negotiate an award exceeding $4
million and that FedGess would pay the legal fees associated with a $4 million
award.  The agreements do not become ambiguous simply because MNC was suppose
to hire Montague and the parties did not indicate who would be responsible for
attorney=s fees if Montague was not hired.  See
Forbau, 876 S.W.2d at 134 (stating that no single provision will control;
rather, all provisions must be considered with reference to the whole
instrument).  The agreements here are worded in such a way that the provisions
regarding the party responsible for legal fees and expenses in the case of a $4
million award can be given a definite or certain legal meaning.  See CBI
Indus., 907 S.W.2d at 520. 








Moreover,
a contract is ambiguous only if its meaning is uncertain or if it is subject to
two or more reasonable interpretations.  Id.  FedGess=s interpretation, that it was
responsible for attorney=s fees if only Montague was hired, is unreasonable and not
supported by the four corners of the contract.  There is nothing in the
agreements that reflects any intent to shift the responsibilities for payment
of legal expenses associated with the condemnation away from FedGess and over
to MNC.   Accordingly, FedGess has not provided two or more reasonable
interpretations of the agreements sufficient to render them ambiguous.  We
therefore hold  that the agreements are not ambiguous.  We overrule FedGess=s second issue.

We affirm the trial court=s judgment.

 

 

/s/      Adele Hedges

Chief Justice

 

 

Judgment rendered
and Memorandum Opinion filed December 18, 2007.

Panel consists of
Chief Justice Hedges and Justices Anderson and Seymore.