Opinion issued January 29, 2009










 


     





 In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00310-CV




SEMBERA SECURITY SYSTEMS, INC. a/k/a SEMBERA SECURITY,
INC., Appellant

V.

TEXAS MUTUAL INSURANCE COMPANY f/k/a TEXAS WORKERS’
COMPENSATION INSURANCE FUND and TEXAS WORKERS’
COMPENSATION FUND, Appellee

* * *

TEXAS MUTUAL INSURANCE COMPANY f/k/a TEXAS WORKERS’
COMPENSATION INSURANCE FUND and TEXAS WORKERS’
COMPENSATION FUND, Appellant

V.

SEMBERA SECURITY SYSTEMS, INC. a/k/a SEMBERA SECURITY,
INC., Appellee




On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2001-27696




MEMORANDUM OPINION

          Appellant, Sembera Security Systems Inc. (“Sembera”), sued appellee, Texas
Mutual Insurance Company (“TMI”), for breach of contract after TMI cancelled
Sembera’s workers’ compensation insurance coverage for non-payment of premium. 
The parties filed cross-motions for summary judgment. The trial court granted
summary judgment in favor of Sembera on the issue of liability. The issue of
damages was tried to a jury. TMI appeals the trial court’s summary judgment ruling. 
Sembera appeals the damages and attorney’s fees awarded in the final judgment. 
          TMI presents seven issues in its appeal. In its first and second issues, TMI
contends that the trial court erred by granting Sembera’s motion for summary
judgment and by denying TMI’s motion for summary judgment on same grounds. In
its third through fifth issues, TMI challenges the legal sufficiency of the evidence of
causation and of the damages awarded for lost profits. In its sixth issue, TMI
contends that the trial court erred by overruling its objections to the admission of
certain parol evidence concerning damages. Finally, in its seventh issue, TMI
contends that “the trial court erroneously instructed the jury that it should determine
the meaning and effect of a written contract without reference to the terms of that
contract.”
          Sembera presents two issues in its appeal. Sembera contends that the trial court
erred by (1) improperly reducing the jury’s award of damages by applying a credit
that the jury had already taken into account and (2) awarding attorney’s fees in an
amount less than that established by the evidence.
          We reverse the summary judgment granted in favor of Sembera, and against
TMI, on Sembera’s breach of contract claim and render judgment that Sembera take
nothing by its claim.
Summary of Facts and Procedural History
          Sembera is engaged in installing home-security alarms in master-planned
residential communities and providing alarm-monitoring services to residential
customers in the Houston area. In 1998, Sembera and En-Touch Systems, Inc. (“En-Touch”), a telecommunications provider, entered into a “Security Services
Agreement” (the “Agreement”) for a five-year term. Pursuant to the Agreement,
Sembera was to provide alarm-monitoring services to customers generated by En-Touch, En-Touch would handle the invoicing of those customers, and the parties
would split the profits. The parties agreed that Sembera would own the accounts and
that En-Touch would not engage in competing services. As part of the Agreement,
Sembera agreed to maintain workers’ compensation insurance.
          Sembera contracted through its agent, El Dorado Insurance Agency, Inc. (“El
Dorado”), for worker’s compensation coverage from TMI.


 Pursuant to the policy
issued by TMI (the “Policy”), Sembera was required to pay an estimated initial
premium at the beginning of the Policy term (a sum estimated by TMI based on
payroll data submitted by Sembera) and then to pay a final premium at the end of the
term (a sum based on an actual audit by TMI). 
          On October 15, 1999, TMI billed Sembera for an estimated initial premium of
$2,744 for the Policy Period beginning November 1, 1999 and ending November 1,
2000. Sembera timely paid this sum to TMI. 
          Three months later, on January 10, 2000, TMI notified El Dorado that if it
failed to provide information concerning Sembera’s payroll data within 10 days, the
Policy would be endorsed with a higher premium. TMI did not receive a response. 
On February 4, 2000, TMI invoiced Sembera for an additional premium of $2,494.
Sembera did not pay the invoice. 
          On March 6, 2000, TMI issued a Notice of Cancellation to Sembera, stating
that the Policy would be cancelled on March 21, 2000 if the additional premium was
not paid. Sembera did not respond. TMI cancelled the policy and issued a refund to
Sembera of $490 in unearned premium. Sembera accepted the funds.
          Days later, on March 29, 2000, Sembera’s agent, El Dorado, submitted the
additional payroll information to TMI and requested that the policy be retroactively
reinstated. TMI reviewed the information, determined that the additional premium
was not owed, retroactively reinstated the Policy, and invoiced Sembera for
repayment of the $490 in premium that had been refunded. Sembera did not repay
the $490. 
          On May 2, 2000, TMI issued a second Notice of Cancellation based on
Sembera’s failure to repay the $490. Sembera did not respond. On May 17, 2000,
TMI cancelled the Policy and refunded $602 to Sembera in unearned premium. 
Sembera accepted and deposited the $602, and did not seek reinstatement of the
Policy.
          In late May 2000, En-Touch notified Sembera that it was in default of the
Agreement because its workers’ compensation coverage had been cancelled. El
Dorado then issued a certificate of insurance to En-Touch, erroneously representing
that Sembera had coverage in place. En-Touch later discovered that the certificate
of insurance was not valid and, on October 18, 2000, En-Touch notified Sembera that
it was immediately terminating the Agreement. En-Touch and Sembera ultimately
settled their dispute. Sembera contends that it was forced to sell off certain accounts
to En-Touch for $405,000—an amount well below their fair market value.
          In May 2001, Sembera filed the instant suit against its agent, El Dorado,
alleging, inter alia, negligent misrepresentation, fraud, and breach of contract. Two
years later, on May 9, 2003, El Dorado filed a third-party petition against TMI for
contribution and indemnity. On September 15, 2003, Sembera asserted a breach of
contract claim directly against TMI. Sembera alleged that TMI’s cancellation
constituted a breach of the Policy contract and that such cancellation caused Sembera
to sustain lost profits when En-Touch terminated the Agreement for failure to
maintain insurance.
          Subsequently, El Dorado and Sembera settled their dispute, with El-Dorado
paying Sembera $200,000. El Dorado is not a party to this appeal. The dispute
between Sembera and TMI moved forward.
          On August 19, 2005, Sembera and TMI filed cross-motions for summary
judgment concerning whether TMI breached the Policy by cancelling coverage. In
its motion, Sembera characterized the suit as “a dispute about when premium is due
under a contract.” Sembera contended that the express terms of the Policy provided
for premium to be collected at only two points in time: at the beginning and at the end
of the Policy term. Sembera contended that TMI improperly attempted to collect
additional premium during the Policy term and that TMI’s cancellation of Sembera’s
coverage for failure to pay the additional premium constituted a breach of the
Agreement. To support its motion, Sembera attached an Agreed Stipulation of Facts;
the March 6, 2000 Notice of Cancellation; the May 2, 2000 Notice of Cancellation;
and a copy of the Policy. 
          In response to Sembera’s motion for summary judgment, TMI contended that,
pursuant to the express terms of the Policy, TMI was permitted to cancel Sembera’s
coverage for non-payment of premium when, after requisite notice, Sembera failed
to return the refunded $490. 
          TMI also moved for summary judgment on Sembera’s breach of contract claim. 
TMI asserted, inter alia, that the Policy required advance payment of the entire
estimated premium and that, following the reinstatement of the Policy, Sembera was
“$490 ‘in the hole’ and failed to remedy it.” TMI asserted that the Policy provided
an express right to cancel the policy for nonpayment of premium and that TMI did not
breach the Policy by cancelling Sembera’s coverage. 
          To support its motion, TMI attached the Agreed Stipulation of Facts, the
Policy, the Premium Endorsement to the Policy, the Texas Workers’ Compensation
and Employers’ Liability Manual, certain underwriting documents, and excerpts from
the deposition testimony of Linda Chittendon, a customer service representative at El
Dorado; Elliott Flood, vice president and associate general counsel for TMI; and Gary
Beck, insurance expert for Sembera.
          In its response to TMI’s motion for summary judgment, Sembera maintained
its contention that TMI lacked a contractual basis to cancel the coverage. 
          On December 26, 2005, the trial court granted summary judgment in favor of
Sembera on Sembera’s breach of contract claim and denied TMI’s motion for
summary judgment on same. The issue of damages was tried to a jury. The jury
found that Sembera had sustained $1,710,433 in past lost profits from its loss of the
En-Touch Agreement and $1,082,926 in future lost profits. In addition, the jury
awarded attorney’s fees of $187,500 for trial, $75,000 for an appeal to this court, and
$50,000 for an appeal to the Texas Supreme Court. 
          On February 13, 2007, the trial court entered judgment on the jury’s findings,
after deducting $200,000 as an offset or credit for monies received by Sembera by
settling its claims with El Dorado. In addition, the trial court deducted $405,000 as
an offset or credit for monies received by Sembera by settling its claims with En-Touch. 
          Both TMI and Sembera appeal. Because we conclude that TMI’s appeal of the
trial court’s summary judgment ruling concerning liability is meritorious, we do not
reach Sembera’s appeal of the damages and attorney’s fees entered by the trial court.
TMI’s Appeal
           In its first and second issues on appeal, TMI contends that the trial court erred
by granting Sembera’s motion for summary judgment on Sembera’s breach of
contract claim and by denying TMI’s motion for summary judgment. Specifically,
TMI contends that its cancellation of Sembera’s Policy did not constitute a breach of
contract because the Policy provided for cancellation for non-payment of premium.
A.      Standard of Review 
          We review a trial court’s grant of summary judgment de novo. Provident Life
& Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). A summary
judgment under Texas Rule of Civil Procedure 166a(c) is properly granted only when
a movant establishes that there is no genuine issue of material fact and that it is
entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A plaintiff moving
for summary judgment must prove that it is entitled to summary judgment as a matter
of law on each element of his cause of action. MMP, Ltd. v. Jones, 710 S.W.2d 59,
60 (Tex. 1986). A defendant moving for summary judgment must either (1) disprove
at least one element of the plaintiff’s cause of action or (2) plead and conclusively
establish each essential element of an affirmative defense to rebut plaintiff’s cause.
Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995). 
          The movant must conclusively establish its right to judgment as a matter of
law. See Jones, 710 S.W.2d at 60. A matter is conclusively established if reasonable
people could not differ as to the conclusion to be drawn from the evidence. City of
Keller v. Wilson, 168 S.W.3d 802, 816 (Tex. 2005). In deciding whether there is a
disputed issue of material fact precluding summary judgment, evidence favorable to
the non-movant will be taken as true, every reasonable inference must be indulged in
favor of the non-movant, and any doubts resolved in its favor. Knott, 128 S.W.3d at
215. 
          When, as here, both sides move for summary judgment and the trial court
grants one motion and denies the other, we review the summary judgment proof
presented by both sides and determine all questions presented. See Centerpoint
Energy Houston Elec., L.L.P. v. Old TJC Co., 177 S.W.3d 425, 430 (Tex.
App.—Houston [1st Dist] 2005, pet. denied). When reviewing a summary judgment,
a court of appeals should consider summary judgment grounds that the trial court
rules on and the movant preserves for appellate review that are necessary to a final
disposition of the appeal. Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 626
(Tex. 1996). 
B.      Analysis 
          The essential elements of a breach of contract claim are (1) the existence of a
valid contract; (2) performance or tendered performance by the plaintiff; (3) breach
of the contract by the defendant; and (4) damages sustained as a result of the breach.
Valero Mktg. & Supply Co. v. Kalama Int’l, 51 S.W.3d 345, 351 (Tex.
App.—Houston [1st Dist.] 2001, no pet.). 
          Part 6 of the Policy contract, “Conditions,” provides for cancellation by TMI
as follows, in relevant part:We [TMI] may cancel this policy. We [TMI] must mail or deliver to
you [Sembera] not less than ten days advance written notice stating
when the cancellation is to take effect.
 
          In addition, the Policy includes an amendatory endorsement (the
“Endorsement”) that adds certain notice requirements imposed by statute. See Tex.
Lab. Code Ann. § 406.008 (Vernon 2006). The Endorsement provides, in relevant
part, as follows:
We [TMI] may cancel this policy. We [TMI] may decline to renew
it. We [TMI] must give you written notice of cancellation . . . .
Notice of cancellation or nonrenewal must be sent to you not later
than the 30th day before the date on which the cancellation or
nonrenewal become effective, except that we may send the notice not
later than the 10th day before the day on which the cancellation or
nonrenewal becomes effective if we cancel or do not renew because
of . . . [f]ailure to pay a premium when payment is due. . . .          As part of the written stipulations entered in the trial court, the parties
stipulated that the Policy language is unambiguous. It is a basic premise of contract
interpretation that unambiguous contracts are construed as a matter of law. Coker v.
Coker, 650 S.W.2d 391, 393–94 (Tex. 1983). When a contract is unambiguous, “the
court must enforce the contract as written.” Transcon. Gas Pipeline Corp. v. Texaco,
Inc., 35 S.W.3d 658, 665 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). In
construing a contract, we attempt to ascertain the parties’ true intent “as expressed in
the instrument.” Nat’l Union Fire Ins. Co. v. CBI Indus., 907 S.W.2d 517, 520 (Tex.
1995). We presume that the parties intended for every clause to have some effect.
Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex. 1996). We give terms
their plain, ordinary, and generally accepted meaning, unless the instrument shows
that the parties used them in a technical or different sense. Id. Here, the record does
not demonstrate that the parties used the terms of the Policy in a technical or different
sense. Therefore, we will give terms their plain and ordinary meaning. 
          Under the express terms of the Endorsement, which became “effective on the
inception of the Policy,” TMI was permitted to cancel the Policy for failure to pay a
premium when due by giving Sembera “notice not later than the 10th day before the
day on which the cancellation . . . becomes effective.”



          The summary judgment evidence shows that the parties executed an “Agreed
Stipulation of Facts” in the trial court. As stipulated, at the beginning of the Policy
term, TMI billed Sembera for an estimated initial premium of $2,744 and that
Sembera timely paid this sum to TMI. Three months later, after finding a discrepancy
in Sembera’s payroll records, TMI notified El Dorado that it must provide additional
information concerning Sembera’s payroll data within 10 days or a higher initial
premium would be assessed. Sembera did not respond.
 
          Consequently, as the parties stipulated, TMI invoiced Sembera for an
additional $2,494 in premium. Sembera did not pay this amount. Subsequently, after
providing notice to Sembera, TMI cancelled the Policy and issued a refund to
Sembera of $490 in unearned premium. Sembera accepted the funds. 
          The parties further stipulated that El Dorado, days later, submitted the
requested additional payroll information to TMI and requested that the policy be
retroactively reinstated. TMI reviewed the information, determined that Sembera did
not owe the additional estimated premium of $2,494, and retroactively reinstated the
Policy. 
          At this point, the propriety of TMI’s cancellation of the Policy for the failure
to pay the additional $2,494 is of no moment because TMI admitted error,
retroactively reinstated the Policy, and restored Sembera to its original estimated
initial premium of $2,744. Through the course of events, however, because El
Dorado or Sembera had not timely responded to TMI’s request for more information
or additional premium, TMI had already cancelled the Policy and refunded to
Sembera the sum of $490—which was the unearned portion of the $2,744. 
          When the Policy was retroactively reinstated, as Sembera had requested, the
total estimated initial premium of $2,744 was also reinstated—as if no cancellation
had taken place—but $490 then remained outstanding. TMI invoiced Sembera for
the $490, but Sembera did not return it. 
          Consequently, as the parties stipulated, on May 2, 2000, TMI issued a second
Notice of Cancellation based on Sembera’s failure to repay the $490. Sembera did
not respond. On May 17, 2000, TMI cancelled the Policy and refunded $602 to
Sembera in unearned premium. Sembera accepted the $602 and did not seek
reinstatement of the Policy. 
          Sembera contends that TMI breached the Policy contract by cancelling the
Policy based on Sembera’s failure to pay “additional premium” that TMI improperly
attempted to collect during the interim of the Policy term. Sembera contends that,
pursuant to terms of the Policy, TMI could only assess an estimated premium at
Policy inception and a final premium at the end of the Policy term based on an actual
audit. Sembera argues that no provision of the Policy allowed TMI to bill Sembera
mid-term for “additional premiums.” 
          The record shows, however, that the $490 at issue was not an “additional
premium”; rather, it was a portion of the estimated initial premium that had been
refunded as “unearned premium”—a fact to which the parties stipulated. By failing
to return the $490 when it requested reinstatement, Sembera left the estimated initial
premium for the Policy term unpaid in part. Consequently, by the express terms of
the Endorsement, TMI was permitted, with 10 days’ notice, to cancel the Policy for
non-payment of premium. 
          The parties stipulated that TMI issued 15 days’ notice of cancellation to
Sembera and, when Sembera did not respond, TMI cancelled the Policy and refunded
$602 in unearned premium. Sembera accepted the refund and did not seek
reinstatement. 
          We conclude that, because the express terms of the Policy afforded TMI a right
to cancel coverage for non-payment of premium, TMI’s cancellation of the Policy did
not, as a matter of law, constitute a breach of the Policy contract. See Coker, 650
S.W.2d at 393–94 (construing contract as matter of law); Texaco, Inc., 35 S.W.3d at
665 (enforcing contract as written). We hold that the trial court erred by granting
summary judgment in favor of Sembera on its breach of contract claim and by
denying TMI’s motion for summary judgment on same. 
          Accordingly, TMI’s first and second issues are sustained.
          Having sustained TMI’s first and second issues concerning TMI’s liability for
breach of contract, which obviates the damages issue, we do not reach TMI’s
contentions that the trial court erred by entering damages based on Sembera’s
evidence of lost profits and by overruling TMI’s objections to the admission of parol
evidence. See Cates, 927 S.W.2d at 626 (holding that appellate court should consider
summary judgment grounds that are necessary to final disposition of appeal). In
addition, we do not reach Sembera’s contentions that the trial court erred by
improperly computing damages and awarding attorney’s fees. See id.
Conclusion
          We reverse the judgment of the trial court and render judgment that the
summary judgment motion of TMI is granted, that the summary judgment motion of 
Sembera is denied, and that Sembera take nothing by its claim.                        




                                                             Laura Carter Higley
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Higley and Wilson.